**U. S. MANGANESE CORPORATION, Preston W. Grace, Preston W. Grace, Jr., and Charles B. Grace, Appellants,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Appellee.**

No. 77–1805.

United States Court of Appeals, Eighth Circuit.

Submitted May 3, 1978.

Decided May 24, 1978.

---

**10.** *See Kimball v. Callahan,* 493 F.2d 564, 567–69 (9th Cir.), *cert. denied,* 419 U.S. 1019, 95 S.Ct. 491, 42 L.Ed.2d 292 (1974).

Lester & Shults, Little Rock, Ark., for appellants.

George Pike, Jr., Little Rock, Ark. and Martin Portnoy, New York City, for appellee.

Before GIBSON, Chief Judge, VOGEL, Senior Circuit Judge, and BRIGHT, Circuit Judge.

VOGEL, Senior Circuit Judge.

Appellants brought this diversity action against appellee Merrill Lynch, Pierce, Fenner & Smith (hereinafter Merrill Lynch), seeking relief on the ground that certain margin account[1] agreements entered into by the parties were usurious.

Merrill Lynch is a broker and dealer in securities, with its principal place of business in New York. On November 8, 1957, appellant Preston W. Grace, Sr., opened a margin account, No. 563–79326, with Merrill Lynch at the latter's branch office in Little Rock, Arkansas. A second margin account, No. 563–07493, was signed by Grace for appellant U. S. Manganese Corporation[2] on December 9, 1970. Grace's sons, Charles B. and Preston W., Jr., opened a margin account, No. 563–22290, on December 15, 1966. In addition, they opened a

---

1. Appellants describe the operation of a margin account as follows:

> In a margin account, the customer deposits securities with Merrill Lynch. The securities deposited may be either purchased through Merrill Lynch or obtained by the customer from other sources. * * * Merrill Lynch loans funds to the customer on the security of the securities deposited. The amount of the loans made by Merrill Lynch is fixed as a percentage of the market value of the securities deposited. The regulations of the Federal Reserve Board and also the policy of Merrill Lynch determine the amount of the loan which will be made. Interest on the loan is billed to the customer on a monthly basis. The interest rate charged the customer varies from day to day and is fixed as the interest rate paid by Merrill Lynch on brokers' call loans, plus an added, fixed percentage.

2. Preston W. Grace, Sr., is vice president of U. S. Manganese Corporation.

"special margin" account, No. 563–30487, on January 7, 1971. The accounts numbered 563–07493 and 563–30487 expressly provided that New York law was to govern the account agreements; accounts numbered 563–79326 and 563–22290 did not contain such an express provision.

The three margin accounts and the special margin account were all personally managed by Preston W. Grace, Sr., who is a businessman, a member of the bar of the State of Arkansas, and a resident of Batesville, Arkansas. Grace, Sr., has engaged in numerous loan transactions with Merrill Lynch on the accounts through the Little Rock branch office, and has maintained an account with Merrill Lynch for 34 years.

In September of 1973, the interest rate charged by Merrill Lynch rose above ten percent. Grace continued to transact business on the margin accounts after the interest rate increased. On October 30, 1974, the loan balances on the margin accounts were:

| | |
|---|---|
| 563–79326 – | $137,308.08 |
| 563–22290 – | 25,080.67 |
| 563–07493 – | 219,157.46 |

On November 20 and 21, 1974, Grace entered orders with Merrill Lynch in the amount of $2 million, $1 million on account No. 563–79326 and $1 million on account No. 563–22290, to purchase U. S. Government securities.[3] As of November 29, 1974, the loan balances on the margin accounts were:

| | |
|---|---|
| 563–79326 – | $1,073,780.24 |
| 563–22290 – | 983,728.49 |
| 563–07493 – | 219,108.83 |

On December 12, 1974, three weeks after ordering the $2 million worth of securities, Grace and his associates brought the present action.[4] They claimed that the margin account agreements were usurious[5] and sought a cancellation of the liens on their securities held by Merrill Lynch, damages, and other relief. Grace admitted that "it might have crossed my mind" when purchasing the $2 million worth of government securities on margin to subsequently file suit and attempt to cancel the debt.

The parties filed cross-motions for summary judgment on the issue of whether the loan agreements between the parties were governed by New York law or by Arkansas law. It was conceded by appellants that if New York law applied to the loan agreements, the complaint should be dismissed. The parties submitted exhibits, affidavits, and depositions in support of their respective positions. Both parties asserted that there was no genuine issue as to any material fact on the question of whether New York law or Arkansas law governed the agreements.

After a hearing on the motions, the trial court,[6] applying Arkansas law,[7] determined (1) that the parties had agreed that the law of New York would be the applicable law, and (2) that there was a reasonable relationship between the transactions and the State of New York. It granted summary judgment in favor of Merrill Lynch, denied appellants' motion for summary judgment, and entered an order dismissing appellants' complaint. Appellants have taken this timely appeal from the order of dismissal.

On appeal, appellants argue (1) that the court erred in finding that the parties had agreed that New York law governed the margin account agreements, and (2) that the court erred in applying Arkansas statutes to determine which state's law governed the agreements. We affirm for the reasons set forth herein.

---

3. The U. S. Government securities bore interest at 5⅞ths percent and 9 percent; a down payment of approximately 10 percent was required for their purchase.

4. The complaint was filed in the United States District Court for the Eastern District of Arkansas, Western Division.

5. Under Arkansas law, interest rates exceeding 10 percent per annum are usurious. Ark.Stat. Ann. § 68–602 (1957 Replacement).

6. The Honorable Gerald W. Heaney, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

7. Arkansas choice of law rules apply. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

I. In the leading case of *Cooper v. Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158, 161–62 (1963), the Supreme Court of Arkansas indicated that in determining whether a multi-state contract is usurious, it is proper to apply "the law of the state which the parties intended to govern the contract, provided that state has a substantial connection with the contract." Appellants contend that the trial court erred in determining the parties had agreed that New York law was to govern accounts No. 563–79326 and No. 563–22290, because there was no express agreement to this effect.[8] They invite us to apply two alternative choice of law tests provided in *Cooper*: (1) where the contract was made, and (2) where the contract was to be performed in its most essential features. 364 S.W.2d at 161.

■ As a preliminary matter, we note that summary judgment under Federal Rule of Civil Procedure 56 would ordinarily not be the proper posture for determining whether the parties had agreed that a particular state's law was to govern a transaction. In this case, however, the parties apparently submitted all the evidence they had to offer, in the form of exhibits, affidavits, and depositions. There was no dispute as to the underlying evidentiary facts.

In a similar context, the Ninth Circuit stated in *Gillespie v. Norris*, 231 F.2d 881, 883–84 (9th Cir. 1956):

This Court holds that, by acquiescence in this procedure, the parties waived jury trial and submitted all questions of fact relating to novelty, utility, invention and anticipation to the court for determination. It already has been shown that there were questions of fact upon which the parties were at issue. Now, while summary judgment cannot be granted where there are questions of fact to be disposed of, even by consent of all concerned, there is no reason why parties cannot agree to try a case upon affidavits, admissions and agreed documents. In effect, that is what was done here.

And in *Starsky v. Williams*, 512 F.2d 109, 112 (9th Cir. 1975), the court commented:

We are mindful that the mere fact that the parties make cross-motions for summary judgment does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the judge to render judgment in favor of one side or the other. 6 J. Moore, Federal Practice par. 56.13 (1965). However, in this case, the parties had in fact agreed that all of the underlying material facts were those reflected by the written record before the court. Given the unique procedural history of the litigation, which was drawn out over two and one-half years, the court was justified in concluding that the parties had in effect and in substance agreed to a trial of the reinstatement claim on the written record.

Here, the parties, in effect, submitted the case for trial on an agreed written record. The court was therefore free to resolve the issues of ultimate fact in determining whether the loan transactions between the parties were governed by New York law or by Arkansas law. As to these findings, we apply the "clearly erroneous" standard of Federal Rule of Civil Procedure 52(a) on review.

■ The account agreements numbered 563–79326 and 563–22290 do not contain express provisions as to which state's law governs the agreement. However, an agreement that a particular state's law will govern a loan contract need not be express, but may be implied. *See Yarbrough v. Prentice Lee Tractor Co.*, 252 Ark. 349, 479 S.W.2d 549 (1972). Here, there is ample support in the uncontested facts for the trial court's determination that the parties agreed that New York law would govern the loan transactions in question.

As we have indicated, subsequent to opening margin account No. 563–79326, Preston W. Grace, Sr., opened a margin

account agreement on behalf of U.S. Manganese Corp., No. 563–07493, expressly providing that New York law was to govern. Charles B. Grace and Preston W. Grace, Jr., opened a special margin account expressly providing that New York law was to govern, after opening account No. 563–22290. Thus, all of the appellants have made, directly or indirectly, agreements with Merrill Lynch expressly providing that New York law was to govern. The later margin account agreements operate in the same manner as the earlier agreements. Also, each agreement contains express provisions integrating it with the other accounts of the customer with Merrill Lynch for certain specified purposes. It is reasonable to conclude that accounts No. 563–79326 and No. 563–22290 involve the same agreement with respect to the application of New York law as was expressed in the other two account agreements.

Furthermore, Grace, Sr., learned that Merrill Lynch's interest rates had been increased to above ten percent in approximately October of 1973, and he was familiar with the Arkansas law on usury. However, he made no attempt to cancel the margin account agreements at that time, but continued to do substantial business on them. Grace's continued and extensive dealings, under the circumstances, indicate that his intention was that New York law applied to the margin account agreements. *See Yarbrough v. Prentice Lee Tractor Co., supra,* 479 S.W.2d at 553.

As we conclude that the trial court did not err in determining the parties agreed that New York law would govern, we do not apply the other choice of law tests provided in *Cooper.*

■ II. In its decision, the trial court referred to Arkansas statutes in determining which state's law was applicable to the loan agreements. The Supreme Court of Arkansas has indicated that provisions of the Uniform Commercial Code, Ark.Stat. Ann. § 85–1–101 et seq. (1961 Addendum and 1975 Supp.), do not affect Arkansas law on usury. *Lyles v. Union Planters National Bank of Memphis,* 239 Ark. 738, 393 S.W.2d 867 (1965) (dictum); *Cooper v. Cherokee Village Development Co., supra,* 364 S.W.2d at 162. However, there is little difference, if any, between the Uniform Commercial Code provision, Ark.Stat.Ann. § 85–1–105(1) (1975 Supp.), and Arkansas case law on usury regarding the test for determining when parties may agree that another state's law will govern an agreement. Section 85–1–105(1) requires a "reasonable relation" between the transaction and the state whose law is chosen to govern. The cases applying Arkansas usury law have stated the test similarly. *E. g., Lyles v. Union Planters National Bank of Memphis, supra,* 393 S.W.2d at 868–69 (agreement and "reasonable and bona fide basis for the parties so agreeing" required); *Cooper v. Cherokee Village Development Co., supra,* 364 S.W.2d at 158 (agreement and "substantial connection" between the other state and the contract required); *National Surety Corp. v. Inland Properties, Inc.,* 286 F.Supp. 173, 190 (E.D.Ark.1968), *aff'd,* 416 F.2d 457 (8th Cir. 1969) (agreement and "reasonable relationship" between the chosen body of law and the contract required).

Here, in addition to the agreement between the parties, the undisputed facts show a substantial relationship between the account agreements and the State of New York.[9] Thus, New York law would proper-

9. The record discloses, in part, the following connections between the margin account agreements and the State of New York: The principal offices of Merrill Lynch are located in New York; the customer's margin account agreement is approved and accepted in New York by a general partner or officer of Merrill Lynch; the original margin account agreement card is retained in New York; computer facilities are located in New York and all account entries resulting from any transaction effected by the customer relative to the account are recorded by the computer in New York; written confirmations of each customer's transactions are prepared in New York and transmitted to the branch office where they are typed by means of an automated teleprinter which is linked to the computers in New York; the customer's monthly statements of account are prepared in New York; nearly all securities transactions executed by Merrill Lynch are cleared and settled in New York; all payments made to Mer-

ly be applied under any of the above tests. The trial court correctly concluded that New York law applied, and its reference to Arkansas statutes is not material. *See U. S. Gypsum Co. v. Greif Brothers Cooperage Corp.*, 389 F.2d 252, 262 (8th Cir. 1968).

The trial court's decision is affirmed.

rill Lynch branch offices are deposited in local banks and are transferred to Merrill Lynch's main banks in New York City by wire system each day; the main funding for loans on mar-gin by Merrill Lynch is provided by commercial banks located in major cities, primarily in New York City.