818 F.2d 19
 AETNA LIFE INSURANCE COMPANY and Aetna Casualty and Surety
Company, Appellees,
v.
GREAT NATIONAL CORPORATION, a Delaware corporation, the name
of which has been changed to GNC Energy Corporation; Great
National Corporation; Great National Coal of Texas, Inc., a
Texas corporation; Great National Corporation, a Nevada
corporation; Great National Royalty Corporation, a Texas
corporation, Appellants,
United States of America; Southwestern Electric Power
Company; Hale Oil Company, Inc.; and Dupree
Distributing Co., Inc.
 No. 86-2162.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 17, 1987.
Decided May 6, 1987.
 
 Jerry L. Canfield, Fort Smith, Ark., for appellants.
 M. Gayle Corley, Little Rock, Ark., for appellees.
 Before JOHN R. GIBSON, Circuit Judge, and FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Great National Corporation (now GNC Energy Corporation entered into a loan agreement with Aetna Life Insurance Company and Aetna Casualty and Surety Company (Aetna). Great National defaulted on the loan and Aetna commenced this action to recover the principal, accrued interest and attorney's fees. Great National interposed a defense that the loan was usurious under Arkansas law. Aetna moved for partial summary judgment as to the usury defense claiming Texas, not Arkansas, law applied to the loan. The district court[1] granted Aetna's motion. The case was then tried to the court and resulted in a judgment in favor of Aetna. This appeal followed. The sole question presented on appeal is the district court's granting of partial summary judgment on Great National's usury defense. Finding no error, we affirm.
 
 
 2
 The standard for determining a motion for summary judgment is plainly stated in the Federal Rules of Civil Procedure. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court has recently reasserted the value of summary judgment as a tool in disposing of factually unsupported claims or defenses.
 
 
 3
 Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." ... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.
 
 
 4
 Celotex Corp. v. Catrett, --- U.S. ----, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1) (citations omitted).
 
 
 5
 In determining whether the loan agreement is governed by Arkansas or Texas law we apply Arkansas' choice-of-law rules. Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); U.S. Manganese Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 576 F.2d 153, 155 n. 7 (8th Cir.1978). Arkansas has applied three different theories in determining what law governs a multi-state contract: (1) the law of the state in which the contract was made; (2) the law of the state in which the contract is to be performed; and (3) the law of the state which the parties have intended to govern the contract. Cooper v. Cherokee Village Development Co., 236 Ark. 37, 42-43, 364 S.W.2d 158, 161-62 (1963). All the loan documents (Note Agreement; 12% Notes; Mortgage, Deed of Trust, Assignment and Security Agreement; and Guarantee Agreement) provide that the agreement is to be governed by Texas law.
 
 
 6
 Great National does not dispute the existence of these provisions. Therefore, we proceed from the initial proposition that Texas law applies and need not analyze the loan under the two other choice-of-law theories. See Bice Construction Co. v. CIT Corp., 700 F.2d 465, 466 (8th Cir.1983) ("Under Cherokee Village, where the parties stipulate in a multistate contract that a particular state's law will govern the validity of a contract, that state law will be held to apply...."); U.S. Manganese Corp., 576 F.2d at 156-57; Lyles v. Union Planters National Bank, 239 Ark. 738, 739, 393 S.W.2d 867, 868-69 (1965). In contracts involving usurious interest under Arkansas law,[2] however, further scrutiny is required.
 
 
 7
 A contract may be invalid if it is merely "a cloak for usury or where the parties to a wholly Arkansas contract have sought to avoid the Arkansas usury law by having the validity of the contract determined by the law of a state having no substantial connection with the contract." Cooper, 236 Ark. at 44, 364 S.W.2d at 162-63; Grogg v. Colley Home Center, Inc., 283 Ark. 120, 123, 671 S.W.2d 733, 734 (1984).
 
 
 8
 It is true, of course, that whenever contracting parties stipulate that their contract is to be governed by the law of one State rather than by the law of another State, or whenever they consciously act in a manner so as to bring into play the law of one State in preference to the law of another State, it may be said that their stipulation or conduct is a "device to evade" the law of the other State, but to so characterize their stipulation or conduct does not invalidate it. Cooper makes it clear that parties have a right to contract as to governing law so long as the chosen body of law bears a reasonable relationship to the contract.
 
 
 9
 National Surety Corp. v. Inland Properties, Inc., 286 F.Supp. 173, 190 (E.D.Ark.1968), aff'd, 416 F.2d 457 (8th Cir.1969). Consequently, Texas law will be applied provided Texas has a substantial connection with the contract. Bice Construction Co., 700 F.2d at 466; U.S. Manganese Corp., 576 F.2d at 157. Great National's principal purpose in obtaining the loan was to retire short term debts and to purchase coal washing and mining equipment for use in Arkansas. The property located in Arkansas and the mining contracts applicable to that property provided security for the loan. The situs of land which is security for a loan is not determinative as to which state's law applies. Cooper, 236 Ark. at 42, 364 S.W.2d at 161. Aetna is incorporated and has its principal place of business in Connecticut. Great National has its principal place of business in Texas. Negotiations for the loan took place in Texas, New York, Connecticut, Oklahoma and Arkansas. The ultimate execution of the written documentation and the delivery of money took place in Texas. Based on these undisputed facts, it is undeniable that Texas has a substantial connection with the contract.[3]
 
 
 10
 Therefore, the district court did not err in granting partial summary judgment and we affirm.
 
 
 
 [1]
 The Honorable Morris S. Arnold, United States District Judge, Western District of Arkansas
 
 
 [2]
 It is undisputed that the loan agreement would be usurious under Arkansas law and therefore void. Ark. Const., art. XIX, Sec. 13 (1947) (Amended November 2, 1982, see Ark. Const., art. XIX, Sec. 13 & Amend. 60 (Supp.1985)); Ark.Stat. Secs. 68-602, 604, 608 & 609 (Repl.1979) (possibly superseded, see Ark. Const., art. XIX, Sec. 13 & Amend. 60 (Supp.1985))
 
 
 [3]
 It is also true that Arkansas has a substantial connection with the contract. This, however, is not the focus of the inquiry. Great National urges that the "center of gravity" theory of choice-of-laws be applied. Great National then contends that Aetna multiplied the transactions in Texas as a sham and that Arkansas should therefore be considered the "center of gravity." Arkansas has declined to adopt this theory, Cooper, 236 Ark. at 43, 364 S.W.2d at 162, and we conclude that the question of which state is the center of gravity is irrelevant to our inquiry. It is sufficient that the undisputed facts show that Texas has a substantial connection with the contract