**AMERICAN HONDA FINANCE CORPORATION, Plaintiff,**

v.

**GLOMC, INC. and William D. McMahen, Defendants.**

**No. LR–C–91–398.**

United States District Court, E.D. Arkansas, W.D.

May 17, 1993.

Richard D. Taylor, Little Rock, AR, for plaintiff.

Ike Allen Laws, Jr., Laws & Murdoch, P.A., Russellville, AR, for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

Plaintiff, American Honda Finance Corporation (hereinafter "Honda Finance"), is a California corporation licensed as a financial institution and as a personal property loan broker under the laws of that state. Defendant GloMc, Inc. ("GloMc") is an Arkansas corporation engaged in the business of buying and selling, among other things, Honda products. Defendant William D. McMahen owns all of the stock of GloMc.

In September 1989, GloMc entered into a security agreement with Honda Finance for the purpose of obtaining financing for its acquisition of certain Honda products to be used as inventory in GloMc's business. The agreement was signed by McMahen in his capacity as president of GloMc on September 18, 1989. As additional security for the financing, McMahen executed a continuing personal guaranty to the benefit of Honda Finance, also on September 18, 1989, obligating himself to pay any amounts due and unpaid under the agreement. Subsequent thereto, on September 27, 1989, the security agreement was signed by an officer of Honda Finance.

Not long after the execution of the agreement, GloMc began to experience financial difficulties and fell behind in its payments to Honda Finance. After attempts by Honda Finance to work with GloMc in bringing its account current proved unsuccessful, Honda Finance repossessed the inventory in GloMc's possession in December 1990. Honda Finance filed this action on June 28, 1991 after both GloMc and McMahen failed to pay Honda Finance the amount due under the agreement. Honda Finance seeks judgment for the amount of the indebtedness, costs and attorney's fees.

GloMc and McMahen have admitted defaulting on the payments, but have counterclaimed on the ground that the interest charged by Honda Finance is usurious and, thus, the agreement invalid. Defendants seek their own damages, costs and attorney's fees from Honda Finance.

The parties have stipulated that the amount due Honda Finance under the agreement is $361,000.00. The only real point of contention concerns defendants' argument that the interest charged by Honda Finance is usurious. To answer that question, the Court must first ascertain which state's law should govern the interpretation, or enforcement, of the security agreement. In making that determination, the Court must apply the choice-of-law rules of the State of Arkansas. *See Klaxon Co. v. Stentor Electric Manufac-*

*turing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941).

Both sides have cited the Court to *Cooper v. Cherokee Village Development Co.*, 236 Ark. 37, 364 S.W.2d 158 (1963), in support of their arguments as to which substantive law should be applied herein. In *Cooper*, a case involving a financing agreement between an Arkansas developer and a New York financing company, the Supreme Court of Arkansas noted that it previously had used the following three bases in determining what law should govern the validity of a multi-state contract:

(1) the law of the state in which the contract was made;

(2) the law of the state in which the contract is to be performed in its most essential elements; and

(3) the law of the state which the parties intended to govern the contract, provided that state has a substantial connection with the contract.

*Id.*, 364 S.W.2d at 161. In affirming the decision of the trial court that New York law should govern and the agreement was valid and enforceable, the court stated in *Cooper* that "we are of the opinion that upon the application of any of the three traditional rules, recognized by this court, that the law of New York is controlling." *Id.* at 162. The court also pointed out in *Cooper* that "[t]his court has consistently inclined toward applying the law of the state that will make the contract valid, rather than void." *Id.*

The United States Court of Appeals for the Eighth Circuit has utilized one or more of the three *Cooper* theories in multi-state contract cases on a number of occasions. *See, e.g., Aetna Life Insurance Co. v. Great National Corp.*, 818 F.2d 19 (8th Cir.1987). Following the lead of the Supreme Court of Arkansas and the Court of Appeals for the Eighth Circuit, this Court shall apply *Cooper* in deciding the issues now before it.

■ In the instant case, the security agreement and the personal guaranty provide that all rights, duties and interests in those documents, and the validity and interpretation thereof, shall be governed by the laws of the State of California. Similarly, in both *Cooper* and *Aetna Life*, all loan documents contained provisions regarding which law should govern the interpretation and validity of the agreements. In such a circumstance, the Court should "proceed from the initial proposition that the [specified] law applies and need not analyze the loan under the two other choice-of-law theories." *Aetna Life, supra*, at 20. However, where, as here, allegations of usury under Arkansas law are involved, further inquiry is required.

■ "A contract may be invalid if it is merely 'a cloak for usury or where the parties to a wholly Arkansas contract have sought to avoid the Arkansas usury law by having the validity of the contract determined by the law of a state having no substantial connection with the contract.'" *Id.*, quoting *Cooper, supra*, at 162–63. Parties have the right to contract as to governing law provided the selected body of law has a reasonable relationship to the agreement. Consequently, California law should be applied to the agreement between these parties provided California has a substantial connection with the transaction.

■ Defendants suggest that the subject documents were negotiated in Arkansas, that defendants signed them in Arkansas, and that payments thereunder were to be made in Texas, not California. California has no substantial connection with the agreement. Conversely, Honda Finance maintains that the agreement is clearly "not a wholly Arkansas contract" and that California has a substantial connection to the agreement by virtue of the receipt and execution of the documents by one of its officers in California, the choice of law stated in the documents, the shipment of goods to GloMc from outside Arkansas, the sending of invoices to GloMc from California, and the provision for payments to be made to Honda Finance's office in Irving, Texas to an account which was "swept" each day by Honda Finance in California into an account in that state. Honda Finance argues that when these factors are considered in light of the inclination toward applying the law of the state that will make the agreement valid, the conclusion is obvious that California has a substantial connec-

tion with the agreement and California law should govern.

The Court also finds it relevant that McMahen, according to his own testimony, has considerable experience in business transactions and, more specifically, contracts and financing. McMahen also testified that he was aware that California law permits lendors to charge a higher rate of interest than does Arkansas law, that he was not required to obtain financing with plaintiff, and that he wanted plaintiff to do the financing because he thought it was to his advantage given the large amount of money involved. The Court concludes that McMahen, both on behalf of GloMc and individually, entered into the agreement freely and with a thorough understanding of its terms.

After careful review and consideration, the Court finds upon all of the foregoing that the agreement between these parties was not a wholly Arkansas contract and that the State of California does indeed have a substantial connection to the agreement. Plaintiff shall have judgment against defendants, jointly and severally, in the amount of $361,000.00, plus whatever amount of costs and attorney's fees are deemed appropriate after proper presentation by plaintiff. The award of costs and attorney's fees shall be determined in a subsequent order and shall be reflected in a supplemental judgment.