Frank GOULD, as Administrative Manager of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers, Plaintiff,

v.

MOBILE CONCRETE PUMPING, INC., Defendant,

MOBILE CONCRETE PUMPING, INC., Plaintiff,

v.

INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCALS 16 AND 16–B, Defendant.

Nos. 93–1252–CV–SW–1, 93–3473–CV–W–1.

United States District Court,
W.D. Missouri,
Western Division.

Aug. 8, 1994.

Thomas J. Grady, St. Louis, MO, Michael A. Crabtree, Washington, DC, James I. Singer, Schuchat, Cook & Werner, St. Louis, MO, for plaintiffs.

Donald W. Jones, Springfield, MO, James G. Walsh, Jr., Kansas City, MO, Robert Stewart, Stanley Schroeder, Terry Potter, St. Louis, MO, for defendants.

Douglas W. Greene, III, Twibell, Greene and Johnson, Springfield, MO, for Intern. Union of Operating Engineers.

## ORDER

WHIPPLE, District Judge.

Pending before the Court is the motion of Plaintiff Frank Gould, administrative manager of Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Fund"), for summary judgment in Case No. 93–1252–CV–W–1. Said motion, together with suggestions in support, was filed on January 18, 1994. Defendant Mobile Concrete Pumping, Inc. ("Mobile") filed suggestions in opposition on April 1, 1994, and supplemental suggestions in opposition on May 23, 1994. Central Fund filed reply suggestions on May 31, 1994. After due consideration of the briefs submitted by the parties, for the reasons set forth below, said motion is denied.

### I.

A movant is entitled to summary judgment pursuant to Federal Rule of Civil Procedure 56(c), "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of proof. *Aetna Life Insurance Co. v. Great National Corp.*, 818 F.2d 19, 20 (8th Cir.1987).

After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

When considering a motion for summary judgment, the Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). In addition, the Court is required to resolve all doubts as to the facts or existence of any material fact against the moving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir.1976). With these principles in mind, the Court turns to a brief examination of the facts.

## II.

On July 28, 1992, Wirt Corporation, the general contractor on the Cox Medical Center project ("Cox Project"), executed an agreement with a number of subcontractors and labor unions, including the International Union of Operating Engineers, Local 16–16B ("Local Union") that required all contractors doing work on the Cox project to use members of the A.F.L.–C.I.O. unions which were signatory to this agreement ("Wirt Agreement"). Jim Hoovens ("Hoovens") signed the Wirt Agreement on behalf of the Local Union, and R.H. Benzanson signed on behalf of the Cox Medical Center. Pursuant to this agreement, Hoovens informed Mobile representative, Bob Rumpza ("Rumpza") that in order for Mobile to work on the Cox Project, Mobile's employees working on said project would have to be in the Local Union. In contrast, Rumpza states that he was told by Hoovens that Mobile need only have one employee working on the project be a member of the Local Union.

As a result of this discussion between Hoovens and Rumpza, Mobile entered into a "Pre–Hire" Collective Bargaining Agreement with the Local Union on February 4, 1993 (first "Pre–Hire Agreement"). In this agreement, the parties, represented by Hoovens and Rumpza, agreed to be bound by all of the terms and conditions contained in the agreement between the Builders' Association of Missouri and the Local Union ("Builders' Association Agreement") concerning work done by Mobile on the Cox Project. Pursuant to the terms of the Builders' Association Agreement, Mobile was required to make fringe benefit contributions to the Central Fund on behalf of Mobile's employees working on the Cox Project. Rumpza claims that prior to the filing of this suit, he was not given a copy of the Builders' Association Agreement. Furthermore, Rumpza states that he signed the Pre–Hire Agreement in reliance upon Hoovens' assurances that Mobile need only have one Local Union employee working on the Cox Project.

Pursuant to Rumpza's understanding of the Pre–Hire Agreement, Mobile made pension fund contributions on behalf of only one employee, Olin Meadors ("Meadors"), the only Mobile employee represented by the Local Union. Due to pension fund accounting difficulties in distinguishing between hours worked on the Cox Project and other projects, on April 16, 1993, the same parties entered into a superseding agreement that required Mobile to make pension fund contributions with respect to all of its work (second "Pre–Hire Agreement"). Again, however, it is disputed whether this obligation applied to all of Mobile's employees or only to Meadors. On July 27, 1993, the Local Union sent written notice to Mobile that it expected Mobile to bring itself into full compliance with the terms of the Pre–Hire Agreements and the Missouri–Builders' Agreement concerning the payment of all required fringe benefit contributions allegedly due. It appears that Mobile employed eight operating engineers on whose behalf pension fund payments by Mobile were required under the terms of the agreements.

Central Fund alleges that under the terms of the Pre–Hire Agreements and the Mis-

souri Builders' Association Agreement, Mobile was required to make these payments for the time period between February 4, 1993, the date the first Pre–Hire Agreement was executed, and September 10, 1993, the date the union was decertified pursuant to a National Labor Relations Board supervised election. However, Mobile asserts that the Central Fund never contacted any of its employees even though their addresses and phone numbers were available, and that none of these employees have a valid claim for benefits during the period for which contributions are now sought.

In the pending motion, the Central Fund contends partial summary judgment as to liability is appropriate. Concerning the amount of unpaid contributions allegedly due, Central Fund prays the Court for an Order requiring Mobile to produce for audit and inspection all relevant payroll books and records necessary to determine such. While not completely clear, Mobile's opposition to the pending motion appears to be four-fold. First, Mobile asserts that the Pre–Hire Agreements are void because the Local Union lacked majority status. Second, Mobile claims that the Wirt Agreement is in violation of the National Labor Relations Act, and therefore, because the Pre–Hire Agreements were "the product" of Wirt Agreement, Mobile's contribution obligations to Central Fund are null and void. Third, Mobile contends the facts and circumstances surrounding the execution upon which Central Fund's action is predicated constitute fraud in the execution making Mobile's contribution obligations unenforceable. Fourth, Mobile contends that it should not have to contribute to a pension fund from which its employees will obtain no benefits. Each will be addressed in turn.

### III.

■ Mobile's first argument is easily dismissed. In *Berry v. Garza*, 919 F.2d 87, 90 (8th Cir.1990), the Eighth Circuit ruled that an employer who knowingly entered into a facially valid collective bargaining agreement with a union in order to obtain union work was estopped from raising the defense of the union's lack of majority status in order to avoid the employer's obligation to a multiemployer pension fund. *Accord Agathos v. Starlight Motel*, 977 F.2d 1500, 1505 (3rd Cir.1992). On the basis of this binding precedent, the Court finds Mobile's first argument to be meritless.

### IV.

■ Mobile's second theory for avoiding liability to Central Fund for the unpaid pension fund contributions is based upon § 8(e) of the National Labor Relations Act, 29 U.S.C. § 158(e). This statute makes unenforceable any agreement between a labor union and an employer that requires the employer to refrain from associating with a third party. Specifically, § 8(e) makes it an unfair labor practice:

> for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void: Provided, that nothing in this subsection shall apply to an agreement between a labor organization and an employer in the construction industry relating to the contracting or subcontracting or work done at the site of the construction, alteration, painting, or repair of a building, structure, or other work[.]

Mobile claims that because the Wirt Agreement is in violation of this statute, it is void, and therefore, Mobile is not liable for any pension fund contributions which were "a product" of this agreement. The Central Fund apparently admits that the Wirt Agreement is the type of agreement that the general prohibition was designed to forbid. However, the Central Fund argues that the Wirt Agreement fits within the construction industry proviso, and is thus exempt from the general prohibition. In opposition to this contention, Mobile argues that because Cox Medical Center, signatory to the Wirt Agree-

ment, is not an "employer in the construction industry," the proviso is inapplicable.

On the basis of *Building and Construction Trades Council of the Metropolitan District v. Associated Builders,* 507 U.S. ——, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993), the Court finds that there is no legal significance to the fact that Cox Medical Center signed the Wirt Agreement. In *Associated Builders,* there was an agreement between a state agency as construction project owner and a labor union. The agreement recognized the union as the exclusive bargaining agent for all craft employees working on the project. In its opinion, rather than examining the matter at issue here, the Supreme Court focused its attention on whether a state agency could enter into such an agreement. In ruling that the agreement did not violate the National Labor Relations Act, *Id.* at ——, 113 S.Ct. at 1199, 122 L.Ed.2d at 580, the Supreme Court did not question the legality of a construction project owner being party to such an agreement. The Supreme Court wrote:

> There is no reason to expect these defining features of the construction industry to depend upon the public or private nature of the entity purchasing contracting services. To the extent that a private purchaser may choose a contractor based upon that contractor's willingness to enter into a pre-hire agreement, a public entity as *purchaser* should be permitted to do the same.

*Id.* at ——, 113 S.Ct. at 1198, 122 L.Ed.2d at 578–79 (emphasis in original). Consequently, the Court finds Defendant Mobile's argument on this issue to be devoid of merit. *Accord A.L. Adams Const. Co. v. Georgia Power Co.,* 733 F.2d 853, 857 (11th Cir.1984).

## V.

■ As its third argument in opposition to the pending motion, Mobile asserts that the Pre–Hire Agreements are null and void because they were the product of fraud in the execution. To support this assertion, Mobile presents evidence that Hoovens misrepresented various terms of the Pre–Hire Agreements, and but for said misrepresentations, Rumpza would not have signed them. In addition, Mobile claims that prior to the filing of the complaint in this case, it did not receive a copy of the Missouri Builders' Association Agreement, referenced in the Pre–Hire Agreements, where its pension fund obligations were spelled out.

■ While courts have interpreted 29 U.S.C. § 1145 as precluding employers from raising a variety of contract defenses to avoid the obligation to contribute to employee benefit plans, including fraud in the inducement, fraud in the execution is a recognizable defense making the agreement void *ab initio. Agathos,* 977 F.2d at 1505. Thus, in order to rule the pending motion, it becomes critical to distinguish these two types of fraud. Fraud in the inducement is the type of fraud that induces a party "to assent to something he otherwise would not have," while fraud in the execution is the type by which a party is induced "to believe the nature of his act is something entirely different than it actually is." *Southwest Administrators, Inc. v. Rozay's Transfer,* 791 F.2d 769, 774 (9th Cir. 1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987). The latter arises when a party executes an agreement "with neither knowledge nor reasonable opportunity to obtain knowledge or its character or its essential terms." *Id.* To maintain such a defense, it is necessary to establish "excusable ignorance of the contents of the writing signed." *Id.*

■ On several prior occasions, courts have been required to apply this distinction in order to determine whether an employer was liable for delinquent pension fund contributions. When an employer claims that union officials fraudulently made oral modifications of a written collective bargaining agreement, courts routinely find such conduct to constitute fraud in the inducement. *Agathos,* 977 F.2d 1500; *Central States, SE & SW Areas Pension Fund v. Gerber Truck,* 870 F.2d 1148 (7th Cir.1989) (en banc); *Rozay's Transfer,* 791 F.2d at 774–75; *Southern California Retail Clerks Union v. Bjorklund,* 728 F.2d 1262, 1265–66 (9th Cir.1984). In contrast, when an employer signs a collective bargaining agreement that union officials represent to be something of a "wholly different nature," courts interpret this conduct as fraud in the execution. *Operating Engi-*

*neers Pension Trust v. Gilliam,* 737 F.2d 1501, 1504–05 (9th Cir.1984) (employer signed collective bargaining agreement that the union had told him was an application to become a union member as an owner-operator); *Connors v. Fawn Mining Corp.* 30 F.3d 483 (3rd Cir.1994) (release date August 16, 1994) (employer signed signature page of wage agreement unattached to the rest of the document believing that there was no agreement as to a contractual obligation to make pension fund contributions).

After carefully reviewing this case law, the Court determines that Mobile is asserting a defense of fraud in the execution, which if proven, would be a valid defense to the Central Fund's claim for delinquent pension fund contributions. Like the employers in *Gilliam* and *Connors,* Mobile signed a document that was radically different than the one it believed it was signing. Unlike those employers who relied upon union officials' oral modifications of a prior written contract, Mobile relied upon the Local Union's representations as to what legal obligations flowed from signing the Pre–Hire Agreements. Rather than alleging that it was misled about the existence of a side agreement, Mobile claims that it was misled as to the nature of the actual language of the pension fund obligation. In short, Mobile never manifested an assent to the pension fund obligations alleged by the Central Fund.

Furthermore, as noted above, Mobile did not receive a copy of the document containing the pension fund obligations prior to execution of the Pre–Hire Agreements. Consequently, the Court finds Mobile's defense as constituting "excusable ignorance of the contents of the writing signed." While recognizing that a party who signs a written agreement is generally bound by its terms, under the circumstances of this case, it was not altogether unreasonable for Rumpza to rely upon Hoovens' representations as to any possible pension fund obligations. While numerous questions of fact remain as to whether this defense will relieve Mobile of liability, the Court finds that Mobile has presented sufficient evidence of fraud in the execution to make summary judgment on the Central Fund's claim inappropriate.

## VI.

In that the Court has already determined that a grant of summary judgment at this time would be improper, a discussion of Mobile's fourth argument in opposition to the pending motion is not necessary. This is fortunate because neither the underlying facts nor the legal authorities were sufficiently briefed by either party.

## VII.

Accordingly, it is ORDERED that Plaintiff Central Fund's motion for summary judgment is DENIED.