## In re Timothy Joel BROCK.

## Timothy Joel BROCK, Plaintiff,

### v.

## FIRST FIDELITY ACCEPTANCE CORPORATION, Greenwich Capital Financial Products, Inc., Autobond Acceptance Corporation, Norwest Bank Minnesota, N.A. and American Lenders Facility, Inc., Defendants.

Bankruptcy No. 96–50961S.
Adversary No. 97–5019.

United States Bankruptcy Court,
E.D. Arkansas,
Pine Bluff Division.

Sept. 23, 1997.

Arnold Goodman, Little Rock, AR, for Plaintiff.

William Waddell, Autobond Acceptance Corp. and First Fidelity Acceptance Corp., Lance Miller, Norwest Bank of Minnesota, N.A., Richard Ramsay, American Lenders Facility, Inc., David Powell, Greenwich Capital Financial Products, Inc., Little Rock, AR, for Defendants.

## ORDER

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the following motions filed by the parties:

1. First Fidelity Acceptance Corporation's Motion for Summary Judgment, filed on August 1, 1997, against the debtor to which the debtor responded, opposing the motion.

2. The debtor plaintiff's Motion for Summary Judgment against First Fidelity Acceptance Corporation and against Norwest Bank Minnesota, N.A., filed on August 28, 1997, to which both defendants responded.

3. The debtor plaintiff's Motion for Leave to File Out of Time, filed on August 29, 1997, in which debtor requests that he be permitted to file his response to First Fidelity Acceptance Corporation's ("First Fidelity") Motion for Summary Judgment out of time.

The complaint seeks monetary damages and a declaratory determination that the interest rate under a contract is usurious under Arkansas law. First Fidelity seeks summary judgment on the basis that Texas law applies to this action, not Arkansas law. Debtor's cross-motion for summary judgment, against both First Fidelity and Norwest Bank, seeks a declaration that the con-

tract which is the subject of this action is governed by Arkansas law.

### Standards Governing Motions for Summary Judgment

Rule 56, Federal Rules of Civil Procedure, provides that summary judgment shall be granted where the pleadings, depositions, answers to interrogatories, admissions or affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Burnette v. Dow Chemical Company,* 849 F.2d 1269, 1273 (10th Cir.1988). Summary judgment is appropriate when a court can conclude that no reasonable juror could find for the non-moving party on the basis of the evidence presented in the motion and response. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–2512, 91 L.Ed.2d 202 (1986). As the Supreme Court has made clear, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2555.

After the movant has made a properly supported summary judgment motion, "the nonmovant [has] the burden of setting forth specific facts showing the existence of a genuine issue of fact for trial." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The nonmovant may not rely on the allegations or denials in its pleadings to establish a genuine issue of fact, but must come forward with an affirmative showing of evidence. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Of course, the trial judge must accept as true the nonmovant's evidence, must draw all legitimate inferences in the nonmovant's favor, and must not weigh the evidence on the credibility of witnesses. *Windon Third Oil and Gas v. Federal Deposit Insurance Corporation,* 805 F.2d 342, 346 (10th Cir.1986).

### The Uncontroverted Facts

The material facts not in dispute are that, on February 16, 1996, the debtor purchased an automobile from Harrell Motors d/b/a/ Pine Dodge GMC, a business located in Pine Bluff, Arkansas. Plaintiff, intending the vehicle to be used for personal use, test drove the car, negotiated the purchase price, and took delivery of the car in Arkansas. The automobile is registered in the state of Arkansas. Financing for the debtor to purchase the automobile was provided by First Fidelity, a Nevada corporation, through its Texas office, and the financing contract was later assigned to various other entities, also defendants in this adversary proceeding. Brock completed all of the documents required for the financing application in Arkansas, which documents were then transmitted to First Fidelity's office in Texas. The heading on the application for financing states in large, bold letters, "First Fidelity Acceptance Corporation." Moreover, plaintiff's affidavit states that he was aware that First Fidelity was "involved" in the financing of the car. Plaintiff also states that he did not know that First Fidelity was located in another state and implies that he did not read the contract.[1] Review and approval of the financing application occurred in Texas. All payments on the contract were made by plaintiff by mailing checks from Arkansas, to either the contract servicer in California, located in Irvine, California or to First Fidelity in Texas. The financing contract states in pertinent part:

GENERAL TERMS * * *

You agree this Contract will be governed by the law of the State of Texas.

At the bottom of the contract, in an outlined box providing to plaintiff notice of entities to contact in case of questions, the following language appears:

To contact the holder of your Contract about this account call the number appearing with the Assignee's name in the ASSIGNMENT section on page 1. If no Assignee is listed, contact the Seller, whose number appears at the top of page 1. This Contract is subject in whole or in part to Texas law which is enforced by the Consumer Credit Commissioner, 2601 N.

---

**1.** It is not relevant what plaintiff may have *thought* the contacts with Texas were. The question before the Court is whether a substantial relationship in fact existed.

Lamar Blvd., Austin, Texas 78705–4207. Phone (512) 479–1285 or (800) 538–1579. Contact the commissioner relative to any inquires or complaints.

### Choice of Law

■■■ The issue before the Court is whether Arkansas or Texas law governs the contract in this adversary proceeding. In determining what law to apply the court first looks to the choice-of-law rules of the forum state, in this instance, Arkansas. *See Aetna Life Insurance Co. v. Great National Corporation,* 818 F.2d 19, 20 (8th Cir.1987); *Bridgeman v. Gateway Ford Truck Sales,* 296 F.Supp. 233 (E.D.Ark.1969), *amended,* 311 F.Supp. 695 (E.D.Ark.1970); *Nursing Home Consultants, Inc. v. Quantum Health Services, Inc.,* 926 F.Supp. 835 (E.D.Ark. 1996), *aff'd,* 112 F.3d 513 (8th Cir.1997). Although Arkansas has applied three different theories in determining what law governs a multi-state contract, where the contract itself provides the choice-of-law as a term, that law generally will apply. *See Aetna Life Insurance Company v. Great National Corporation,* 818 F.2d 19, 20 (8th Cir.1987)("Therefore, we proceed from the initial proposition that Texas law applies and need not analyze the loan under the two other choice-of-law theories."); *American Honda Finance Corporation v. GloMc, Inc.,* 820 F.Supp. 1157, 1158 (E.D.Ark.1993)(Roy, J.); *Cooper v. Cherokee Village Development Co.,* 236 Ark. 37, 364 S.W.2d 158 (1963).

■■■ However, where usurious interest rates are alleged, the Arkansas courts require further scrutiny. *Aetna Life Insurance Co.,* 818 F.2d at 20; *American Honda,* 820 F.Supp. at 1158. Although the Arkansas courts will generally uphold the contractual selection of a particular state's law, and this doctrine is applied in usury cases, the parties' choice-of-law selection is applied only if the state whose law is chosen has either a "substantial connection with" or a "reasonable relationship to" the transaction at issue. *Bice Construction Company v. CIT Corpora-*

*tion of the South, Inc.,* 27 B.R. 543, 546 (E.D.Ark.1982), *aff'd,* 700 F.2d 465 (8th Cir. 1983) (per curiam).[2] The rule is balanced, too, by the Arkansas policy toward applying the law of the state that will make the contract valid, rather than void. *Cooper,* 364 S.W.2d at 161.

■■■ In the instant case, the sale, registration and housing of the property occurred in Arkansas. The plaintiff completed the application for the financing in Arkansas. Notification of the acceptance of the loan came from Texas, the loan funds were authorized from Texas, the decision as to whether the financing would be provided was made by First Fidelity in Texas. This factual situation is similar to several Arkansas cases in which the courts enforced contractual terms requiring the application of foreign, not Arkansas, law. For example, in *American Honda,* 820 F.Supp. 1157, although the documents were negotiated in Arkansas, the defendants signed them in Arkansas, and payments were to be made to a third state, California had a substantial connection with the contract because it were received by an officer in California, the contract required California law, and the payments, although processed in another state, were remitted to the California lender. Similarly, in *Aetna Life Insurance Co.,* 818 F.2d 19, Texas had a substantial connection with the contract, because, although the purpose of the loan was to purchase equipment for use in Arkansas, the property was located in Arkansas, the security was located in Arkansas, Aetna was incorporated in Connecticut, negotiations took place in Texas, New York, Connecticut, Oklahoma and Arkansas, Aetna's principal place of business was Texas and the "ultimate execution" of documents and delivery of money took place in Texas. *Accord Bice Construction Co. v. CIT Corporation of the South, Inc.,* 27 B.R. 543 (E.D.Ark.1982) (Eisele, C.J.); *Wilkins v. M & H Financial, Inc.,* 476 F.Supp. 212 (E.D.Ark.1979)(Roy, J.), *aff'd,* 621 F.2d 311 (8th Cir.1980).

*Manganese Corporation v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 576 F.2d 153 (8th Cir. 1978), the tests do not appear to have distinct standards.

---

**2.** Although most cases use the "substantial relationship" language, *see, e.g., Wilkins v. M & H Financial, Inc.,* 621 F.2d 311 (8th Cir.1980), and some use the tests interchangeably, *see, e.g., U.S.*

It is important that the loan application was accepted in Texas because it was this ultimate decision that permitted the loan, and thereby the sale, to go forward at all. *Cf. Wilkins v. M & H Financial, Inc.,* 476 F.Supp. 212 (E.D.Ark.1979)(Roy, J.), *aff'd,* 621 F.2d 311 (8th Cir.1980)("Only in Mississippi could the Wilkins obtain the financing they needed.... "). Indeed, the debtor admits and the loan application states, that he was considered a bad credit risk. The entire transaction, including sale, would not be finally consummated until the contract documents—and primarily the loan agreement, was finally reviewed, approved, and accepted in Texas by First Fidelity. Similarly, as the situation in *Bice Construction Co. v. CIT Corporation of the South, Inc.,* 27 B.R. 543, 549 (E.D.Ark.1982), "there was a significant event here when this contract was finally approved; that is, the solicitation of it was in Arkansas, but it was not finally approved until it reached the Atlanta level.... A significant part of this relationship ... transpired in Atlanta" *Accord Bridgeman v, Gateway Ford Truck Sales,* 296 F.Supp. 233, 237 (E.D.Ark.1969), *amended,* 311 F.Supp. 695 (E.D.Ark.1970). *See Tiffany Industries v. Commercial Grain Bin Company,* 714 F.2d 799, 801 (8th Cir.1983). Since Texas has a significant relationship to the contract such that the provision requiring the application of Texas law is enforceable.

In addition to his assertion that all significant events relating to the contract occurred in Arkansas, plaintiff also argues that the contractual term requiring the application of Texas law is ambiguous. Specifically, plaintiff argues that the phrase, "This Contract is subject in whole or in part to Texas law ..." makes it ambiguous as to whether the parties intended Texas law to apply. The Court does not believe that any ambiguity exists since the contract clearly states at the beginning that the law of Texas applies, and, this later phrase also requires the application of Texas law. Moreover, the second phrasing is found in a separate box addressing consumer inquiries and complaints. This separate notice advises the plaintiff that the Consumer Credit Commission of the state of Texas also has an interest in enforcing laws in protection of consumers.

This supports, rather than negates, the application of Texas law. In any event, this is not a term voluntarily placed in the contract, but rather, is a notice required to be given to the consumer under Texas law. 21 Tex. Reg. 9211. The language in this notice, including the "in whole or in part" language, is taken from the model clause under the Texas Consumer Credit Commission regulations, *id,* and as such will neither be construed against the defendant nor render the contract ambiguous.

Plaintiff also asserts that First Fidelity is not a party to the contract. Even if true, it is uncertain of what relevance this may be. The identity of the parties does not alter or otherwise negate the language of the contract which requires the application of Texas law or obviate the substantial relationship of Texas to the contract. It is curious, at best, that a party knowingly receives and utilizes funds from an entity, then later asserts that the very entity extending the credit on the date of purchase, is not a party to the loan contract. The assertion, in light of the uncontroverted facts before the Court, as well as the plaintiff's own statements regarding the application and contract, is disingenuous and renders the argument meritless.

### Conclusion

First Fidelity, an entity located outside of Arkansas, extended credit to the Arkansas plaintiff in order that plaintiff could purchase a car. The contract under which credit was extended expressly provided that Texas law would govern. Since, under Arkansas law, Texas had sufficient connection to the contract, the terms of that contract are entitled to be enforced against each party. Since Texas law applies to the contract, the defendant First Fidelity Acceptance Corporation is entitled to judgment on the complaint which asserts only a violation of Arkansas law.

**ORDERED** as follows:

1. First Fidelity Acceptance Corporation's Motion for Summary Judgment, filed on August 1, 1997, is GRANTED.

2. The debtor plaintiff's Motion for Summary Judgment against First Fidelity Accep-

tance Corporation and against Norwest Bank Minnesota, N.A., filed on August 28, 1997, is DENIED.

3. The debtor plaintiff's Motion for Leave to File Out of Time, filed on August 29, 1997, is GRANTED.

**IT IS SO ORDERED.**