Zenaida Garcia **AYALA**, Plaintiff,

v.

**LEDERLE PARENTALS, INC.,**
**et al., Defendants.**

No. CIV. 97–1787 (PG).

United States District Court,
D. Puerto Rico.

Sept. 18, 1998.

Carlos M. Vergne–Vargas, San Juan, PR, for Plaintiff.

Graciela J. Belaval, Hato Rey, PR, for Defendants.

### *OPINION AND ORDER*

PEREZ–GIMENEZ, District Judge.

Plaintiff, Zenaida García Ayala, filed the present action against defendants Lederle Parentals, Inc. ("Lederle"), American Home Products Corp., and American Cynamid for injunctive, compensatory and punitive damages for alleged violations of her federal rights as protected by the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). Jurisdiction is alleged pursuant to 42 U.S.C. § 12117(a), which incorporates by reference § 706 of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(f), and 28 U.S.C. §§ 1331, 1343, 2201 and 2202. Plaintiff further invokes this Court's supplemental jurisdiction over her state law claim under Act Number 44 of July 2, 1985, P.R. Laws Ann. tit. 1, § 501 (1982 & Supp.1992) ("Puerto Rico Disabilities Law"). The parties filed a stipulation of uncontested material facts (Dkt.# 10) which is presently before the Court. Also before the Court are the parties' cross-motions for summary judgment (Dkt.è13 & 14), plaintiff's opposition to defendants' memorandum (Dkt.# 16) and defendants' reply (Dkt.# 19).

### BACKGROUND

Plaintiff began working for Lederle as a temporary clerk typist on October 31, 1983, and thereafter worked as a secretary from October 1983 up until her termination in June 13, 1996. At that time she was a secretary to the Validation Department with a salary of $1,600 per month. She was the only clerical employee rendering services in that department.

Lederle's disability benefits provide that a person may receive up to 14 continuous weeks of salary continuation—i.e., the employee continues to receive his or her full salary while disabled—and, thereafter, short term disability benefits calculated at 60% of the employee's full salary. An employee could be on medical leave under the disability plan for 26 weeks, and, after working two weeks, could again request 26 more weeks for exactly the same disability.

Sometime in the middle of 1986, Ms. García noticed a small mass in her right breast but did not consult a doctor until December of 1986. She was diagnosed as having a carcinoma of the right breast and underwent a right modified radical mastectomy. She was out of work from March 15, 1987 through September 16, 1987, for a total of 184 days. During that period, she received salary continuation benefits for 14 weeks. After those initial 14 weeks, Ms. García continued to receive benefits from the short term disability plan.

Five years later, in August 1993, Ms. García reported to her doctors feeling a mass over the right side of her chest. A biopsy revealed adenocarcinoma of the breast, infiltrating duct type, persistent. Consequently, she was absent from work for 115 days.

In December 1994, Ms. García had a biopsy of a nodule in her neck which was removed on or about March 17, 1995. She was diagnosed with metastatic cancer, was offered radiation treatment but refused it. After using her sick leave in early 1995, plaintiff again began receiving short term disability benefits on March 17, 1995. She was absent for 34 consecutive days, until April 20, 1995. Prior to her notification in March 19, 1995 of her cancer condition she had been absent a total of 88.5 hours during the period of January through March 16, 1995. She was also absent 46 hours in May, not included on the summary of her short term disability benefits.

Thereafter, in the period from June 9 through 25, 1995, Ms. García once again used her salary continuation benefits in relation to her carcinoma of the breast.

Sometime later, Ms. García saw a television report on a cancer treatment center in Illinois and decided to use it. She called and was initially interviewed in June 1995. On or about July 1995, plaintiff informed Lederle that she needed a bone marrow transplant and that said procedure would be practiced at the Midwestern Hospital in Chicago.

She began chemotherapy in August 1995 and was absent from August 7, 1995 through August 20, 1995 and again from September 13, 1995 through September 27. Similarly, in addition to her short term disability benefits, plaintiff took 19 other sick leave hours with pay during the month of August and was paid an additional 8 hours of sick leave in September. Finally, during the month of October, and before her bone marrow transplant, she was absent 11.5 sick leave hours.

Ms. García obtained the disbursement approval for her bone marrow transplant from Lederle's medical insurer in November 1995. Following the transplant, Ms. García could not go out of the house, was very weak and could hardly walk. She was released to return home in December 1995, but had to return to Chicago for follow-up visits every six weeks. November 14, 1995, the date of her hospitalization, was used for the computation of her short term disability benefits period. She began receiving long term disability payments in March 19, 1996.

On April 9, 1996, plaintiff's doctors certified that she was totally disabled, but was expected to be able to return to work on approximately July 30, 1996. On June 10, 1996, Aida Margarita Rodríguez, Lederle's Human resources Director, called Ms. García at home and asked her to visit her at the company. When Ms. García complied, she was informed that her disability was deemed to have begun in March 1995. Thus, she was being terminated because her one year period for job reservation had elapsed three months prior. Ms. García then requested that her job be reserved for an additional two months, inasmuch as she expected to return to work on July 30, 1996. Her request was denied and in a letter dated June 13, 1996, Lederle reiterated that she was terminated because the company's records indicated that her disability commenced on March 17, 1995 (the date she started receiving short term disability benefits) and the law in these cases only provided for a period of one year for reinstatement and benefits.

Ms. García was not released to work on the expected date. Rather, she was finally released on August 22, 1996. After her re-lease she did not apply for employment with Lederle or any other defendant.

## DISCUSSION

■ The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112. It prohibits adverse employment action, such as termination or denial of benefits, when such decisions are based on a qualified individual's actual or perceived disability. *See id.* §§ 12112(a), 12112(b)(3)-(4). Additionally, it prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *id.* § 12112(b)(5)(A). To establish a prima facie case a plaintiff must show three things: first, that she was disabled within the meaning of the Act; second, that she was able to perform, with or without reasonable accommodation, the essential functions of her job; and third, that she was discharged or adversely affected, in whole or in part, because of her disability. *See Soto–Ocasio v. Federal Express Corp.,* 150 F.3d 14, 18 (1st Cir.1998); *Jacques v. Clean–Up Group, Inc.,* 96 F.3d 506, 511 (1st Cir.1996). Defendants' do not contest plaintiff's disabled status. They do, however, claim that she fails to satisfy the second element of her prima facie case—that is, they argue plaintiff is not a qualified individual under the ADA.

■ The requirement that the plaintiff be "qualified" involves, in turn, a two-part inquiry: (1) the plaintiff must show that she satisfies the skills, training and experience prerequisites of the position, and (2) that she could perform the essential functions of her job, either with or without reasonable accommodation. *See Criado v. IBM Corp.,* 145 F.3d 437, 443 (1st Cir.1998); 29 C.F.R. § 1630.2(m). Thus, it is plaintiff's burden to prove that, at the time she sought to resume her job, she had the ability to perform the essential functions of secretary to the Validation Department. *See Soto–Ocasio, supra,* at 18. Of course, an essential function of any job is the ability to appear for work. *See Carr v. Reno,* 23 F.3d 525, 530 (D.C.Cir. 1994); *Tyndall v. National Educ. Ctrs., Inc.*

*of Cal.*, 31 F.3d 209, 213 (4th Cir.1994). In the instant case, plaintiff's doctors certified on April 9, 1996 that she was totally disabled and unable to work. Thus, at the time of her termination, June 10, 1996, plaintiff was unable to perform the essential functions of her job. (Stipulation, ¶ 36) (Dkt.# 10). She argues, however, that her doctors had also certified that she was expected to be able to return to work around July 30, 1996, and that defendants failure to hold her position for another two months constitutes a violation of their duty of reasonable accommodation. She contends that she is a qualified individual because she would have been able to perform her job if Lederle had provided her with the accommodation requested.

As explained above, a "qualified individual" is one which can perform the essential functions of the job *with or without reasonable accommodation.* Since it is clear that plaintiff could not return to work unless Lederle extended her job reservation rights for an additional two months, the Court must therefore determine whether plaintiff's requested accommodation was reasonable under the circumstances in order to conclude whether she is a "qualified individual" under the ADA.

The First Circuit Court of Appeals has cautioned that "cases involving reasonable accommodation turn heavily upon their facts and an appraisal of the reasonableness of the parties' behavior." *Jacques, supra,* at 515. *See also Soto–Ocasio, supra,* at 19. In the instant case, the employer's policy provided for job reservation rights up to one year. Her disability was deemed as having begun on March 17, 1995. Thus, her job reservation rights expired March 19, 1996. Nevertheless, plaintiff was not terminated until almost three months later in June 13, 1996. Lederle, in fact, extended plaintiff's reservations rights—or at least did not terminate her—for an additional three months. At that time, plaintiff requested that her reservation rights be extended for one more month based on her doctor's prognosis was that she would be able to return to work by July 30, 1996. This Court finds that plaintiff's request was not reasonable under the circumstances. This is even more so since the evidence demonstrates that plaintiff was not ready to return to work until August 22, 1996. So, she would have actually needed a two month extension. Thus, contrary to plaintiff's assertions, defendants had no guarantee that the additional leave requested was for a definite period of time and "[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect." *Myers v. Hose,* 50 F.3d 278, 283 (4th Cir.1995). *See also McDonald v. Pennsylvania, Dept. of Pub. Welfare, Polk Center,* 62 F.3d 92, 97 (3rd Cir.1995). While some situations might mandate unpaid leave of absence as an appropriate accommodation, the Court finds that requiring an employer to extend an employee's job reservations rights five months in excess of established policy place the employer in an untenable business position. Plaintiff's request does not constitute "reasonable accommodation" under the ADA. Furthermore, she has failed to establish the "qualified individual" element of her prima facie case of discrimination.

**WHEREFORE,** the Court **DENIES** plaintiff's motion for summary judgment (Dkt.# 13) and **GRANTS** defendant's cross-motion (Dkt.# 14). The above captioned case is hereby **DISMISSED.** Judgment shall be entered accordingly.

Additionally, after dismissing plaintiff's foundational federal claims, this Court must reassess its jurisdiction over the supplemental claims. *See Camelio v. American Fed'n,* 137 F.3d 666, 672 (1st Cir.1998). Thus, in the exercise of its discretion, and after balancing the competing factors, the Court declines to exercise jurisdiction of plaintiff's supplemental claims. Plaintiff's state law claims are hereby **DISMISSED without prejudice.**

**IT IS SO ORDERED.**