# United States Court of Appeals
## For the First Circuit

_____

No. 98-2291

ZENAIDA GARCÍA-AYALA,

Plaintiff, Appellant,

v.

LEDERLE PARENTERALS, INC., ET AL.,

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

_____

Before

Lynch, Circuit Judge,
Campbell, Senior Circuit Judge,
and O'Toole, District Judge.*

_____

Carlos M. Vergne Vargas, with whom Limeres, Vergne & Duran was on brief, for appellant.
Graciela J. Belaval, with whom Martinez, Odell & Calabria was on brief, for appellees.
Barbara L. Sloan, with whom C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, and Jodi B. Danis, Attorney, were on brief, for amicus curiae Equal Employment Opportunity Commission.

_____

* Of the District of Massachusetts, sitting by designation.

_____

May 18, 2000
_____

**LYNCH, Circuit Judge**. Zenaida García-Ayala appeals an order granting summary judgment for her former employer, Lederle Parenterals, Inc., in a suit that alleges wrongful termination and demands injunctive relief and compensatory and punitive damages under the Americans with Disabilities Act. See García-Ayala v. Lederle Parentals, Inc., 20 F. Supp. 2d 312, 313 (D.P.R. 1998). The district court held that García was not a "qualified individual" under the Act because the accommodation she requested from her employer was not "reasonable." See id. at 315. We reverse and direct entry of judgment for the plaintiff.

**I.**

The parties stipulated to the following facts. García worked for Lederle Parenterals, Inc. as a secretary from October 1983 to June 13, 1996, when her employment was terminated. Most recently, she was the only clerical employee in the company's Validation Department.

Lederle's disability benefits program provides that an employee may receive up to fourteen continuous weeks of salary continuation and then short-term disability benefits (STD) at sixty percent of full salary. Under the plan, an employee could be absent from work for a twenty-six week period, work another two weeks, and then be out for an additional twenty-six weeks for the same disability. During her employment at Lederle, García used the salary continuation and short-term disability benefits on fourteen separate occasions, in addition to her sick leave. Lederle had a policy of reserving a job

for one year when employees had been out on STD.  It applied that policy and terminated García's employment after her one-year reservation period ended.

Since 1986, García has been stricken with breast cancer and has undergone several rounds of surgery and chemotherapy.  From March 15, 1987 to September 16, 1987, she was absent from work for 184 days as a result of a modified radical mastectomy.  During this period, she received salary continuation benefits for fourteen weeks, and then short-term disability for the remainder.  From September 1987 until 1993 she was back at work.  Six years later, in August 1993, a biopsy revealed adenocarcinoma of the breast, infiltrating duct type, persistent, and, as a result, García was absent for 115 days.  She then returned to work.

In December 1994, García was diagnosed with adenocarcinoma of the breast, metastatic.  On March 17, 1995, she underwent surgery to remove a nodule in her neck.  Before that surgery, García used up her sick leave and was absent from work for a total of eighty-eight and a half hours.  Following surgery, she received short-term disability benefits for thirty-four consecutive days.  In May, she took an additional forty-six hours of leave.  From June 9 through 25, 1995, she received salary continuation benefits in relation to the medical condition.

-4-

Sometime after her surgery, García saw a television report on a bone marrow transplant procedure that offered a treatment for her cancer. She was interviewed by doctors in June 1995 and García informed Lederle in July that she needed to undergo this procedure, which was only available at a Chicago hospital. From August 7 through 20, 1995, she was absent due to chemotherapy (for which she took nineteen hours sick leave and short-term disability). From September 13 through 27, 1995, she was again absent due to treatment (eight hours sick leave/fifteen days of short-term disability). In October 1995, García took eleven and one-half hours of sick leave.

García was hospitalized for the bone marrow treatment on November 14, 1995. She received STD payments until March 19, 1996. As of that date, she started receiving long-term disability (LTD). Lederle did not consider her to be an employee once she was on LTD. On April 9, 1996, doctors certified to Lederle that García would be able to return to work on July 30, 1996.

On June 10, 1996, Lederle's Human Resources Director, Aida Margarita Rodríguez, called García at home and asked her to come to work to meet with her. García complied and Rodríguez notified her that the company deemed her disability to have begun in March 1995, that her one-year period for job reservation had elapsed in March 1996, and that her employment was terminated. García asked that her job be reserved until July 30th, when her doctors expected her to return to work, but

to no avail. On June 13th, Lederle sent García a letter confirming her conversation with Rodríguez and denying her request for additional leave.

As it turned out, although García had requested an accommodation until July 30th, it was on August 22, 1996 that García's doctors released her for work, though they did not notify Lederle of this and García did not re-apply for employment.

García's essential job functions did not go unfilled. At least three different temporary employees provided by agencies performed García's tasks at Lederle during her medical leave and after her dismissal. Indeed, from June 13, 1996, to January 31, 1997, a period of over seven months from García's dismissal, the company chose to use temporary employees. The company says her position was never filled by a permanent employee. There was no evidence that the temporary employees cost Lederle any more than García would have or that their performance was in any way unsatisfactory.

## II.

On May 16, 1997, García brought suit against Lederle, its parent companies, American Home Products Corp. and American Cynamid Co., and others for alleged violations of the ADA and Puerto Rico Act No. 44 of July 2, 1985, P.R. Laws Ann. tit. 1, §§ 501 et seq., as a result of the termination of her employment following surgery for breast cancer. She seeks back pay, reinstatement (or "front pay"),

injunctive relief from future discrimination, compensatory and punitive damages, and attorney's fees. On March 30, 1998, the parties submitted a stipulation of material facts together with a Motion Submitting Stipulation of Uncontested Material Facts and Legal Controversies. On September 28, 1998, the court granted Lederle's cross-motion for summary judgment, denied García's motion for summary judgment, declined to exercise its supplemental jurisdiction over García's claim under Act 44, and dismissed the case. See García-Ayala, 20 F. Supp. 2d at 313.[1] García appeals.

## III.

There is some disagreement as to what happened at the trial court and, resultantly, as to the standard of review to be applied by this court on an appeal from summary judgment entered after cross-motions. Citing Reich v. John Alden Life Insurance Co., 126 F.3d 1, 6 (1st Cir. 1997), and United Paperworkers International Union, Local 14 v. International Paper Co., 64 F.3d 28, 31 (1st Cir. 1995), both Lederle and García have argued that clear-error review should apply to the factual inferences made by the district court since the decision below was based on stipulated facts and made on cross-motions for

---

[1]     The correct name of the lead defendant in this case is "Lederle Parenterals, Inc." and not "Lederle Parentals, Inc.," as the district court opinion is captioned.

summary judgment.[2] But see Wightman v. Springfield Terminal Ry. Co., 100
F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment
neither alter the basic Rule 56 standard, nor warrant the grant of
summary judgment per se.").

The EEOC, appearing as amicus curiae urges de novo review,
the customary standard for appellate review of summary judgment.  The
district court opinion in this jury-claimed case does not discuss
whether there was a waiver of jury trial rights or a stipulation under
Federal Rule of Civil Procedure 39(a)(1),[3] or whether it was resolving
the matter on a jury-waived and a "case stated" basis or on
conventional summary judgment; the order entered was for summary
judgment (although the opinion once used the phrase "The Court finds").
Out of the confusion, we think it wise to reiterate a few basics.

For the purposes of standard of appellate review in these
circumstances, there is usually a distinction between non-jury and jury
cases. This circuit, in United Paperworkers, held that:

---

[2]      The parties made a joint "Motion Submitting Stipulation of
Uncontested Material Facts and Legal Controversies," and claimed
"[t]here being no genuine controversy as to the material facts in this
matter, the parties stipulate the same, and submit the material facts
to the Court for adjudication on the merits of the legal controversies
in this matter."

[3]      At oral argument on appeal, counsel for García disavowed any
intent not to have a jury trial.  But that may have been a statement as
to trial on damages, once the district court ruled on liability, and
thus consistent with the position in counsel's brief on the standard of
review.

> [i]n a nonjury case, when the basic dispute between the parties concerns only the factual inferences that one might draw from the more basic facts to which the parties have agreed, and where neither party has sought to introduce additional factual evidence or asked to present witnesses, the parties are, in effect, submitting their dispute to the court as a case stated.

Id. (internal quotation marks omitted) (emphasis added). We have reached the same result in other non-jury cases. See Reich, 126 F.3d at 6; EEOC v. Steamship Clerks Union 1066, 48 F.3d 594, 603 (1st Cir. 1995); Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 429-30 & n.7 (1st Cir. 1992); Boston Five Cents Savings Bank v. Secretary of the Dep't of Housing & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985); Federación de Empleados del Tribunal Gen. de Justicia v. Torres, 747 F.2d 35, 36 (1st Cir. 1984); cf. Posadas de Puerto Rico, Inc. v. Radin, 856 F.2d 399, 400-01 (1st Cir. 1988) (same where only one side moved for summary judgment). In such cases, "[t]he standard for appellate review . . . shifts from de novo review to clear-error review; that is, the district court's factual inferences should be set aside only if they are clearly erroneous." United Paperworkers, 64 F.3d at 31.

This rule evolved from -- and makes sense in -- bench trial cases. See 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2720, at 338-39 (1998) (referring to this practice in non-jury cases). Instead of expending time and money on a trial, the parties may decide that the pre-trial record

-9-

establishes all the necessary grounds upon which a judge may enter a final ruling on one or all of the issues in dispute.  See, e.g., Allen v. United Mine Workers 1979 Benefit Plan & Trust, 726 F.2d 352, 353 (7th Cir. 1984).  They are, in essence, skipping trial and proceeding directly to judgment, submitting the case to the judge as stated.[4]

When determining whether this was the path taken by the parties in non-jury cases, this circuit and others inquire into the intentions of the parties and the district court judge, as evidenced by the record on appeal.[5]  See United Paperworkers, 64 F.3d at 31-32 & n.2; see also, e.g., Sherwood v. Washington Post, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989); Wolfe v. United States, 798 F.2d 1241, 1243 n.2 (9th Cir.), amended on other grounds, 806 F.2d 1410, 1411 (9th Cir. 1986); Donovan v. Dialamerica Marketing, Inc., 757 F.2d 1376, 1381-82 (3d Cir. 1985); EEOC v. Maricopa County Community College Dist., 736 F.2d 510, 512-13 (9th Cir. 1984); Satellite Television & Associated Resources,

---

[4]     In these non-jury cases, problems arise for appellate courts when the record is unclear that this is what the parties and the trial judge meant to do.  Consequently, when a claim is made on appeal that the case below was decided as a "case stated," appellate courts invariably look quite carefully at the proceedings in the trial court to make sure that the parties had "willingly foregone their right to a full trial."  Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140, 143 (2d Cir. 1998).

[5]     Some circuits require "explicit waiver" of trial.  Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140, 142-43 (2d Cir. 1998); see also Miller v. LeSea Broad., Inc., 87 F.3d 224, 230 (7th Cir. 1996); May v. Evansville-Vanderburgh Sch. Corp., 787 F.2d 1105, 1115-16 (7th Cir. 1986).

Inc. v. Continental Cablevision of Va., Inc., 714 F.2d 351, 354 (4th Cir. 1983); Wilson v. Block, 708 F.2d 735, 745 n.7 (D.C. Cir. 1983); Crow v. Gullet, 706 F.2d 856, 858 & n.3 (8th Cir. 1983); Lac Courte Oreilles Band v. Voigt, 700 F.2d 341, 349 (7th Cir. 1983); Toney v. Bergland, 645 F.2d 1063, 1066 (D.C. Cir. 1981) (per curiam); Nielsen v. Western Elec. Co., 603 F.2d 741, 743 (8th Cir. 1979); Vetter v. Frosch, 599 F.2d 630, 632-33 (5th Cir. 1979); U.S. Manganese Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 576 F.2d 153, 156 (8th Cir. 1978); United States v. Fred A. Arnold, Inc., 573 F.2d 605, 606-07 (9th Cir. 1978) (per curiam); United States v. Articles of Device Consisting of Three Devices . . . "Diapulse", 527 F.2d 1008, 1011 (6th Cir. 1976); Starsky v. Williams, 512 F.2d 109, 112 (9th Cir. 1975); Tripp v. May, 189 F.2d 198, 199-200 (7th Cir. 1951). See generally Edward J. Brunet, Martin H. Redish, & Michael A. Reiter, Summary Judgment: Federal Law and Practice § 8.01, at 232-34 (1994); William W. Schwarzer, Alan Hirsch, & David J. Barrans, The Analysis and Decision of Summary Judgment Motions 40-41 (1991).

Jury trial cases are treated differently. This court, like nearly all other courts, has refused to make the "case stated" inquiry when one of the parties has requested trial by jury. See United Paperworkers, 64 F.3d at 31 (specifying that the case stated inquiry is limited to non-jury cases); see also Winter v. Minnesota Mutual Life Ins. Co., 199 F.3d 399, 405-08 (7th Cir. 1999) (same); Colan v. Mesa

-11-

Petroleum Co., 951 F.2d 1512, 1517-18 (9th Cir. 1991) (same); Satellite Television, 714 F.2d at 354 (same); Tripp, 189 F.2d at 200 (same); cf. Transworld Airlines, Inc. v. American Coupon Exch., Inc., 913 F.2d 676, 684-85 (9th Cir. 1990) (similar where only one side moved for summary judgment); Nunez v. Superior Oil Co., 572 F.2d 1119, 1124 (5th Cir. 1978) (same).[6] Thus, unsurprisingly, we have reviewed judgments based on cross-motions for summary judgment in jury trial cases de novo. See, e.g., Den norske Bank AS v. First Nat'l Bank, 75 F.3d 49, 53 (1st Cir. 1996).

The distinction between bench and jury trials is appropriate since the right to a jury trial is constitutionally protected and casual waivers are not to be presumed. See U.S. Const. amend. VII; Fed. R. Civ. P. 38(d); Winter, 199 F.3d at 407 n.11; Indiana Lumbermens Mutual Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 374 (8th Cir. 1999); Jennings v. McCormick, 154 F.3d 542, 545 (5th Cir. 1998); LaMarca v. Turner, 995 F.2d 1526, 1544 (11th Cir. 1993); Tray-

---

[6]    We note that cross-motions for summary judgment, in and of themselves, do not constitute waiver of jury trial. See Winter, 199 F.3d at 407-08; Miller, 87 F.3d at 230; Market St. Assocs. Ltd. Partnership v. Frey, 941 F.2d 588, 590 (7th Cir. 1991); John v. Louisiana, 757 F.2d 698, 705 (5th Cir. 1985).
    We have found only two cases that have applied the clearly erroneous standard of review to jury trial cases decided on cross-motions for summary judgment. See Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp., 422 F.2d 1013, 1017-18 (9th Cir. 1970); Gillespie v. Norris, 231 F.2d 881, 883-84 (9th Cir. 1956). But cf. Page v. Work, 290 F.2d 323, 334 (9th Cir. 1961) (per curiam) (upon rehearing, reversing, in a jury trial case, earlier finding that the case had been submitted on the record).

Wrap, Inc. v. Six L's Packing Co., 984 F.2d 65, 67-68 (2d Cir. 1993); Mondor v. U.S. Dist. Ct. for the Cent. Dist. of Cal., 910 F.2d 585, 587 (9th Cir. 1990).

But application of these principles to this case is not straightforward, and we decide the issue of standard of review here under two different doctrines: Federal Rule of Civil Procedure 39(a)(1) and waiver. We determine that García agreed, pursuant to Rule 39(a)(1), that the issues of liability presented for the purposes of the summary judgment cross-motions could be determined by the court, in light of the stipulation filed that "the parties . . . submit the material facts in this matter to the Court for adjudication on the merits on the legal controversies in this matter." Further, plaintiff has urged upon us a clear error standard of review. Although at oral argument plaintiff's counsel said she did not intend to waive her jury trial right, she did not brief this issue on appeal and so she is bound. See Piazza v. Aponte Roque, 909 F.2d 35, 37 (1st Cir. 1990); Fed. R. App. P. 28(a). In light of the wording of the stipulation, together with the fact that García, on appeal, has said that review is for clear error (and not de novo), we treat this, for present purposes, as an appeal from a determination after a Rule 39(a)(1) consent. Consequently, we proceed as if the parties submitted the case to the district court judge as stated, and review of the determination of the district court is for clear error.

-13-

## IV.

García claims that Lederle violated the ADA when the company fired her after she requested additional leave supplemental to her sick and disability leave. Section 102(a) of the ADA states: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . ." 42 U.S.C. § 12112(a). Lederle's primary defense at summary judgment was that García was not a qualified individual because the accommodation she sought was not reasonable.[7] Lederle offered no evidence or argument that the requested accommodation was an undue hardship. In fact, Lederle's appellate argument is inconsistent with its factual stipulation that García's position was terminated because her one-year period of leave had expired. That was the reason the company gave in its letter of termination to García.[8] The company's apparent position that the ADA can never impose an obligation on a company to grant an accommodation beyond the leave allowed under the company's own leave policy is flatly

---

[7]    Lederle's argument ignores our case law that "[a]lthough the qualification analysis could be understood to subsume the concept of reasonable accommodation, we think it analytically sounder to treat the two topics separately." EEOC v. Amego, Inc., 110 F.3d 135, 141 (1st Cir. 1997).

[8]    Citing Duckworth v. Pratt & Whitney, Inc., 152 F.3d 1 (1st Cir. 1998), Lederle claims that no relief may be granted to García because she did not seek reinstatement. As is evident from a reading of that opinion, Duckworth does not stand for that proposition.

-14-

wrong under our precedent.  See, e.g., Ralph v. Lucent Techs., Inc.,
135 F.3d 166, 171-72 (1st Cir. 1998).  The district court order ignored
the position stated in the record by the company and went instead to
the issue of the reasonableness of the accommodation.

To establish an ADA claim, a plaintiff must prove by a
preponderance of the evidence: first, "that she was disabled within the
meaning of the Act; second, . . . that with or without reasonable
accommodation she was a qualified individual able to perform the
essential functions of the job; and third, . . . that the employer
discharged her because of her disability."  Criado v. IBM Corp., 145
F.3d 437, 441 (1st Cir. 1998); accord Feliciano v. Rhode Island, 160
F.3d 780, 784 (1st Cir. 1998); Soto-Ocasio v. Federal Express Corp.,
150 F.3d 14, 18 (1st Cir. 1998).[9]  The parties focus on the second of
these three elements.  Both the EEOC and García argue that the district
court erroneously shifted the burden as to this factor.

In order to be a "qualified individual" under the Act, the
burden is on the employee[10] to show: first, that she "possess[es] 'the

---

[9]     Lederle's argument that there was no intent to discriminate
based on disability misses the important point that the ADA does more
than prohibit disparate treatment.  It also imposes an affirmative
obligation to provide reasonable accommodation to disabled employees.
See Soileau v. Guilford of Me., Inc., 105 F.3d 12, 14-15 (1st Cir.
1997).

[10]     In Feliciano, we said that "[t]he plaintiff, as the party who
must prove that he or she can perform the essential functions of the
position with or without reasonable accommodation, bears the burden of
showing the existence of a reasonable accommodation."  Feliciano, 160

requisite skill, experience, education and other job-related requirements' for the position, and second, [that she is] able to perform the essential functions of the position with or without reasonable accommodation." Criado, 145 F.3d at 443 (quoting 29 C.F.R. § 1630.2(m)); see also 42 U.S.C. § 12111(8); Cleveland v. Policy Mgmt. Sys. Corp., 119 S. Ct. 1597, 1603 (1999). There is no question here as to the first of these two prerequisites. The court correctly stated that "it is [the] plaintiff's burden to prove that, at the time she sought to resume her job, she had the ability to perform the essential functions of secretary to the Validation Department." García-Ayala, 20 F. Supp. 2d at 314. But the statute also places the burden on the defendant to show that an accommodation would be an undue hardship. See 42 U.S.C. § 12112(b)(5)(A) (stating that the term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered identity").

The court also went on to say, "[o]f course, an essential function of any job is the ability to appear for work." Id. (citations omitted). The court then held that García's request for additional

F.3d at 786 (citing Barnett v. U.S. Air, Inc., 157 F.3d 744, 748-49 (9th Cir. 1998)).

-16-

leave (until July 30, 1996) "was not reasonable under the circumstances" because "defendants had no guarantee that the additional leave requested was for a definite period of time and '[n]othing in the text of the reasonable accommodation provision requires an employer to wait an indefinite period for an accommodation to achieve its intended effect.'" Id. at 315 (quoting Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995)). The court also found that, although "some situations might mandate unpaid leave of absence as an appropriate accommodation," a five-month job reservation, "in excess of established policy[,] place[s] the employer in an untenable business position." García-Ayala, 20 F. Supp. 2d at 315. The district court, in our view, committed two types of errors.

A. Individualized Assessment

It appears from the court's statements that it was applying per se rules, and not giving the type of individual assessment of the facts that the Act and the case law requires. The Supreme Court has deemed "essential" individualized attention to disability claims. See School Bd. v. Arline, 480 U.S. 273, 287 (1987). As we said in Criado, "[w]hether [a] leave request is reasonable turns on the facts of the case." Criado, 145 F.3d at 443; see also Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999). It is simply not the case, under our precedent that an employee's request for an extended medical leave will necessarily mean, as the district court suggested, that the

-17-

employee is unable to perform the essential functions of her job.

First, the court did not focus on the employer's statement that the reason that it terminated García was because her medical leave period, under company policy, had expired. The court essentially found that a requested accommodation of an extension of a leave on top of a medical leave of fifteen months was per se unreasonable. But reasonable accommodations may include "job restructuring, part-time or modified work schedules, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). This court and others have held that a medical leave of absence -- García's proposed accommodation -- is a reasonable accommodation under the Act in some circumstances. See Criado, 145 F.3d at 443-44; Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1247 (9th Cir. 1999); Cehrs, 155 F.3d at 782 (citing Criado); Haschmann v. Time Warner Entertainment Co., 151 F.3d 591, 601 (7th Cir. 1998); Rascon v. U S West Communications, Inc., 143 F.3d 1324, 1333-34 (10th Cir. 1998).

Our concern that the court applied per se rules -- rather than an individualized assessment of the facts -- is heightened by other statements. Here, the leave that García requested on June 10 was for less than two months. The district court viewed the request as being for five months, since Rodriguez had advised García, albeit in June, that a one-year period for job reservation had lapsed in March. Even if the request were for an additional five months of unpaid leave,

-18-

we see no reason to adopt a rule on these facts that the additional medical leave sought would be per se an unreasonable accommodation. Well after her termination, as well as during her medical leave, Lederle filled García's secretarial position with individuals hired from temporary agencies. Lederle had no business need apparent from this record to replace García with an in-house hire, and hence would not have suffered had it waited for several more months until García's return. In Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171-72 (1st Cir. 1998), the court held that a four-week additional accommodation, beyond a fifty-two week leave period for mental breakdown, was reasonable for purpose of a preliminary injunction. The district court's statement that the employer was left in an "untenable business position" also reinforces the sense of the use of per se rules and the lack of focus on the facts of this case, given that the employer put on no evidence of undue hardship.[11]

Similarly, the court viewed García's requested accommodation -- additional leave time with a specific date for return -- as a request that her job be held open indefinitely. Lederle had argued that since García's doctor could not give absolute assurances that she would be fit to return to work on July 30th, the request was per se for an indefinite leave and so was unreasonable. García specified, however, when she would return, and her doctor released her for return

_____

[11] Perhaps, alternatively, the statement was only hyperbole.

-19-

several weeks thereafter. There is no evidence that either July 30th or the August 22nd date of medical release, would have imposed any specific hardship on Lederle.  Some employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite.  Each case must be scrutinized on its own facts.  An unvarying requirement for definiteness again departs from the need for individual factual evaluation.[12]  See Haschmann, 151 F.3d at 599-600; Criado, 145 F.3d at 443-44; Rascon, 143 F.3d at 1333-34; Kimbro v. Atlantic Richfield Co., 889 F.2d 869, 878-79 (9th Cir. 1989) (interpreting analogous state statute).  Of course, that a leave is not indefinite does not make it reasonable.  Even short leaves may inflict undue hardship in a given employment situation, and there may be requested leaves so lengthy or open-ended as to be an

---

[12]    The approach urged by Lederle on the district court also ignores "[t]he duty to provide reasonable accommodation is a continuing one . . . and not exhausted by one effort."  Ralph v. Lucent Technologies, Inc., 135 F.3d 166, 171-72 (1st Cir. 1998).  It is an interactive process that "requires a great deal of communication between the employee and employer."  Criado, 145 F.3d at 444 (internal quotation marks and citation omitted); see also Hendricks-Robinson v. Excel Corp., 154 F.3d 685, 693 (7th Cir. 1998) (describing the interactive process); Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 515 (1st Cir. 1996) ("There may well be situations in which the employer's failure to engage in an informal interactive process would constitute a failure to provide reasonable accommodation that amounts to a violation of the ADA.").  Here, Lederle failed to engage in the informal, interactive process.  It simply rejected the request for the accommodation without further discussion and it did so without pointing to any facts making the accommodation harmful to its business needs.

unreasonable accommodation in any situation.

B. Reasonable Accommodation and Undue Hardship

The parties requested that the court determine the issue of liability on the basis of the facts before it. While the burden of showing reasonable accommodation is on the plaintiff,[13] this is a case in which the employer did not contest the reasonableness of the accommodation except to embrace a per se rule that any leave beyond its one-year reservation period was too long. The employer, Lederle, has the burden of proof on the issue of undue hardship, and it did not put on any evidence of undue hardship from García's proposed accommodation. See Ward v. Massachusetts Health Research Institute, Inc., No. 99-1651, 2000 WL 361660 (1st Cir. Apr. 12, 2000) (reversing summary judgment in an ADA case where the employer had produced no evidence of undue hardship).

---

[13]    We are aware of, but see no reason to join, the debate in the circuits on the relationship between the two concepts of undue hardship and reasonable accommodation. Compare Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138-39 (2d Cir. 1995); Walton v. Mental Health Assoc., 168 F.3d 661, 670 (3d Cir. 1999); and Stone v. City of Mount Vernon, 118 F.3d 92, 98-99 (2d Cir. 1997); with Benson v. Northwest Airlines, Inc., 62 F.3d 1108, 1112 (8th Cir. 1995); and White v. York Int'l Corp., 45 F.3d 357, 361 (10th Cir. 1995); and with Barth v. Gelb, 2 F.3d 1180, 1186 (D.C. Cir. 1993); Willis v. Conopco, Inc., 108 F.3d 282, 285-86 (11th Cir. 1997); Barnett v. U.S. Air, Inc., 157 F.3d 744, 748-49 (9th Cir. 1998), amended by 196 F.3d 979, 989 (9th Cir. 1999), and withdrawn pending en banc review, 201 F.3d 1256 (9th Cir. 2000); Riel v. Electronic Data Sys. Corp., 99 F.3d 678, 682-83 (5th Cir. 1996); Monette v. Electronic Data Sys. Corp., 90 F.3d 1173, 1183, 1186 n.12 (6th Cir. 1996); and Vande Zande v. Wisconsin Dept. of Admin., 44 F.3d 538, 542-43 (7th Cir. 1995).

While on different facts, a request for an extended leave could indeed be too long to be a reasonable accommodation and no reasonable factfinder could conclude otherwise, that is not this case for a number of reasons. It does not appear that García expected to be paid for the additional weeks away from work beyond those allowed under the employer's disability benefits program and while her job functions were being performed by temporary help. There is no evidence that the temporary employees were paid more than García or were less effective at her job than she. Indeed, Lederle's continued use of temporary employees and Lederle's failure to replace García indicates the contrary. There was, therefore, no financial burden on the employer from paying an employee who was not performing. It is true that an employer usually needs to have the functions of a job filled, and the fact that essential functions have gone unfilled for a lengthy period could well warrant judgment for an employer. But here, the essential functions of the job were filled, to all indications satisfactorily, by temporary employees. The use of temporary employees is not, of course, always a satisfactory or even a possible solution. But here, there is no evidence that Lederle was under business pressure to fill the slot with another permanent employee (indeed, it never did). In other situations, temporary replacements may be unavailable or unsuited to the position; here, the available evidence is all to the contrary. In addition, as said, there is no evidence that the cost of the temporary

help was greater than the cost of a permanent employee; one might suppose it was less. Thus, the requested accommodation of a few additional months of unsalaried leave, with the job functions being satisfactorily performed in the meantime, is reasonable.

The employer presented the court with no evidence of any hardship, much less undue hardship. On this record, we see no basis for the court to do other than enter judgment for García. Under the EEOC guidelines, 29 C.F.R. § 1630.2(p), factors to be considered as to undue hardship include the cost of the accommodation, the effect on expenses and resources, the impact of the accommodation on the operation of the facility (including on other employees' ability to do their jobs) and the impact on the facility's ability to conduct business. On this record there is no discernible negative impact on any of these factors; indeed, the record shows hardly any discernable impact at all on the employer from the requested accommodation. As it was the employer's burden to produce evidence of hardship, we hold that it must bear the responsibility for the absence of such evidence here.

We stress that the Act does not require employers to retain disabled employees who cannot perform the essential functions of their jobs without reasonable accommodation. Applying this rule to the prolonged disability leave situation is tricky, however. An absent employee obviously cannot himself or herself perform; still, the employer may in some instances, such as here, be able to get temporary

-23-

help or find some other alternative that will enable it to proceed satisfactorily with its business uninterrupted while a disabled employee is recovering. In situations like that, retaining the ailing employee's slot while granting unsalaried leave may be a reasonable accommodation required by the ADA. If, however, allowing the sick employee to retain his or her job places the employer in a hardship situation where it cannot secure in some reasonable alternative way the services for which it hired the ailing employee, and yet is blocked from effecting a rehire, the ADA does not require the retention of the disabled person. Hence, where it is unrealistic to expect to obtain someone to perform those essential functions temporarily until the sick employee returns, the employer may be entitled to discharge the ill employee and hire someone else. An exception to this might be if the requested disability leave was so brief that no undue business harm could reasonably be expected to occur from not filling the vacancy. We add that our analysis, while applicable to these facts, may not be applicable in other cases. Undue hardships are not limited to financial impacts; the term includes accommodations that are unduly extensive, substantially disruptive, or that would fundamentally alter the nature or operation of the business. See 29 C.F.R. pt. 1630, App.

Other factors to be considered as to whether requests for leaves of absence unreasonable include, for example: where the employee gave no indication as to when she might be able to return to work, and,

-24-

instead, she simply demanded that her job be held open indefinitely, see, e.g., Taylor v. Pepsi-Cola Co., 196 F.3d 1106, 1110 (10th Cir. 1999); Watkins v. J & S Oil Co., 164 F.3d 55, 62 (1st Cir. 1998) (citing Myers); Corder v. Lucent Techs. Inc., 162 F.3d 924, 928 (7th Cir. 1998); Duckett v. Dunlop Tire Corp., 120 F.3d 1222, 1226 (11th Cir. 1997) (per curiam); Rogers v. International Marine Terminals, Inc., 87 F.3d 755, 759-60 (5th Cir. 1996); where the employee's absences from work were "erratic" and "unexplained," see, e.g., Waggoner v. Olin Corp., 169 F.3d 481, 484-85 (7th Cir. 1999); where, upon the employee's return to work, she would be unqualified, see, e.g., Tyndall v. National Educ. Ctrs., Inc., 31 F.3d 209, 213-14 (4th Cir. 1994); and where the employee was hired to complete a specific task, see, e.g., Stubbs v. Marc Ctr., 950 F. Supp. 889, 893-95 (C.D. Ill. 1997). Cf. generally Micari v. Trans World Airlines, Inc., 43 F. Supp. 2d 275, 281-82 (E.D.N.Y. 1999) (collecting cases); Powers v. Polygram Holding, Inc., 40 F. Supp. 2d 195, 199-201 (S.D.N.Y. 1999) (same). In addition, this court has inquired into whether the company had made earlier policy decisions that it was more profitable to permit an employee additional leave than to hire and train a new employee. See Criado, 145 F.3d at 444.

These are difficult, fact intensive, case-by-case analyses, ill-served by per se rules or stereotypes. We emphasize that the stipulated record here contains no evidence whatever of any form of

hardship to Lederle as a result of the requested accommodation.  Were this not so, we would feel obligated to return the case to a factfinder for further evaluation.  But given the employer's failure to meet, even minimally, its burden of proof on the issue of hardship, we award judgment to García as a matter of law.

## V.

We <u>reverse</u> the entry of judgment in favor of Lederle, direct entry of judgment on liability under the ADA for García, and <u>remand</u> the case for further proceedings in accordance with this opinion.

So ordered.  Costs to appellant.

- <u>Dissent Follows</u> -

**O'TOOLE, District Judge, dissenting**. After criticizing the district court for deciding this case as a matter of law, the majority then does exactly the same thing. Holding that, on the facts presented to the district court, the plaintiff's request for leave from her job[1] was a reasonable accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., the court directs the entry of a judgment as to liability in favor of the party with the burden of proof. Besides invading the province of fact-finding without warrant, the court's ruling expands the reach of the ADA beyond what its language should properly be understood to authorize. I respectfully dissent.

### I.

The plaintiff's illness caused her to have several substantial periods of absence from work over the course of her employment with the defendant. She was able to be absent and yet remain employed by taking advantage of a combination of employee benefits, including sick leave and short-term disability leave.

It appears from the record that the last time she actually worked was in November, 1995. Beginning in late November, in order to undergo a bone marrow transplant, she began a period of short-term disability leave which apparently expired in March, 1996. Still

---

[1] The court describes the plaintiff's request as one for a period of leave. I have some doubt as to whether that is the best way to describe her request that her job reservation rights be extended longer than the normal period. I am content, however, to accept the court's characterization for the purposes of this discussion.

-28-

recuperating, she then began to receive long-term disability benefits under her employer's plan. In June, the employer notified her that the one-year period for reservation of her job -- that is, her right to return to her job from disability status -- had also expired in March.[2] She asked for a further extension of the reservation of her right to return to work for a few weeks, but her request was denied and her employment was formally terminated.

The court now holds that her request for an extension must be considered a "reasonable accommodation" of her disability which the employer was bound to afford her under the ADA unless the employer could demonstrate that doing so would cause it undue hardship. Since the employer proffered no evidence of undue hardship, the court concludes that the plaintiff is entitled to judgment in her favor as to liability.

## II.

The plaintiff may be entitled to a remedy under the ADA if she is a "qualified individual with a disability." She is a "qualified individual with a disability" if she has the requisite skill and experience for the position, which is undisputed here, and if she is able to "perform the essential functions of the employment position"

---

[2] It does not appear that the plaintiff challenged that calculation either at the time or in her suit. The employer asserts without contradiction that its one-year job reservation period was equal to the period guaranteed under Puerto Rican law.

"with or without reasonable accommodation." <u>See</u> 42 U.S.C. § 12111(8); <u>see also</u> <u>Criado</u> v. <u>IBM Corp.</u>, 145 F.3d 437, 443 (1st Cir. 1998).

There is no dispute that when García's employment was terminated, she was not able to perform her job <u>without</u> an accommodation. She was not then performing it, and had not performed it for some months. Nonetheless, the court concludes that the plaintiff would have been "qualified" to perform her job <u>with</u> the accommodation she requested: that she be excused from performing the job until she had recovered sufficiently to be able to return to work once again.

When a period of leave from a job may appropriately be considered an accommodation that enables an employee to perform that job presents a troublesome problem, partly because of the oxymoronic anomaly it harbors, but also because of the daunting challenge of line-drawing it presents. The prevailing view among the Courts of Appeals, and the law of this Circuit, is that a period of leave <u>can</u> in some circumstances be a reasonable accommodation required of an employer under the ADA. <u>See</u> <u>Criado</u>, 145 F.3d at 443. Put another way, it is wrong to say categorically that leave <u>can never</u> be a reasonable accommodation.

The term "leave" is a capacious one, however, and the cases do not hold that <u>any</u> leave will qualify as a reasonable accommodation. <u>See</u> <u>Walsh</u> v. <u>United Parcel Serv.</u>, 201 F.3d 718, 726-27 (6th Cir. 2000)

(finding leave requested by plaintiff "objectively unreasonable").

"Reasonable accommodation" is also a capacious term, purposefully broad so as to permit appropriate case-by-case flexibility. Whether a particular proposed leave is a reasonable accommodation must be answered in the factual context of the case at hand. See, e.g., Criado, 145 F.3d at 443 ("Whether the leave request is reasonable turns on the facts of the case."). Where many interrelated considerations bear on an assessment of what is "reasonable," prudence cautions against too ready a resort to summary dispositions as a matter of law. See Ward v. Massachusetts Health Research Inst., No. 99-1651, 2000 WL 361660, at *6 (1st Cir. Apr. 12, 2000) (reversing summary judgment; declining to hold accommodation unreasonable per se); Nunes v. Wal-Mart Stores, 164 F.3d 1243, 1248 (9th Cir. 1999) (reversing summary judgment because reasonableness of leave was jury question); Cehrs v. Northeast Ohio Alzheimer's Research Ctr., 155 F.3d 775, 782-85 (6th Cir. 1998) (following Criado and reversing summary judgment for employer); Criado, 145 F.3d at 444 (affirming denial of employer's motion for judgment as a matter of law). In any context, however, to be a "reasonable accommodation" a measure must be both an "accommodation" and "reasonable."

In the first place, an "accommodation" must serve a functional purpose; it is a means to a desired end. An accommodation as contemplated by the ADA is a measure that enables the performance of

a job by a person who, without the measure, is disabled from performing the job. See 42 U.S.C. § 12111(9). It effectively transforms a disabled person into an enabled person for the purposes of the job.

The converse follows. If the measure does not enable the otherwise disabled person to perform the essential functions of the job, it loses its functional quality and consequently fails to operate as an accommodation.

An accommodation must not only be functionally effective; it must also be reasonable.[3] Again, whether a proposed accommodation is reasonable or not will ordinarily be judged on the peculiar facts of a given case. In most cases, it will be a matter to be left to assessment and evaluation by the trier of fact.

Nonetheless, judges may sometimes be called upon to decide what circumstances might make a proposed measure a reasonable accommodation, or not, as a matter of law. See Walsh, 201 F.3d at 726-27 (affirming grant of summary judgment in favor of employer because plaintiff's requested accommodation was "objectively unreasonable"); see also Evans v. Federal Express Corp., 133 F.3d 137, 139-40 (1st Cir. 1998) (affirming summary judgment, and holding that, under state law,

---

[3] The EEOC as amicus argues that a reasonable accommodation is one that is "feasible" and "effective." EEOC Br. at 14, 16. It seems to me that view gives short shrift to the modifier. "Feasible and effective" could be a shorthand way of expressing the functionality necessary to make the measure an accommodation. The inclusion of the modifier indicates that the measure must not only be "feasible and effective," i.e. functional, but "reasonable" to boot.

accommodation not shown likely to be successful was not reasonable).

There is hazard in trying to speak too broadly or too categorically, especially in this area where the varieties of potential accommodations, and the reasons why any given accommodation might or might not be reasonable, are myriad. Still, there will be cases in which a court may appropriately take the question away from the trier of fact and decide it as a matter of law.

### III.

As the court's opinion points out, there is some ambiguity in this record as to whether the parties presented the case to the district court for judgment as a matter of law or for decision on the court's fact-finding. They presented a stipulation of undisputed facts and cross-moved for summary judgment. If nothing else appeared, one would conclude that they were seeking only a ruling of law.

But the parties' stipulation indicated that they were submitting the liability portion of the case "to the Court for adjudication on the merits of the legal controversies in this matter." "Adjudication on the merits" ordinarily suggests more than summary judgment. Unlike a full consideration of a case after trial, summary judgment does not always end in an adjudication, because even on cross-motions based on stipulated facts, a court might conclude that neither side is entitled to win as a matter of law and that the dispute must be submitted to the fact-finder. The full job of the fact-finder, after

all, includes not only settling conflicts in the "basic" facts, but also drawing appropriate inferences from those facts. By praying for adjudication on the merits, the parties indicated that they expected the district court to resolve the factual, as well as legal, issues pertinent to the issue of liability.

Any lingering doubt as to what the parties intended is dispelled by what they have told us. Both sides asserted in their briefs to us that the applicable standard of appellate review is "clear error," the standard used to review fact-finding by a district court. Thus, both before the district court and before this court, the parties presented the matter as having been submitted as a "case stated" for full "adjudication" by the district court.

Moreover, the district court's opinion indicates, consistently with the parties' characterization, that the judge thought he was not merely policing the fact-finding function under Rule 56, but instead was performing it. In posing the issue he was presented with, he said, "[T]he Court must therefore determine whether plaintiff's requested accommodation was reasonable under the circumstances . . . ." García-Ayala v. Lederle Parenterals, Inc., 20 F. Supp. 2d 312, 315 (D.P.R. 1998). He then went on, "The Court finds that plaintiff's request was not reasonable under the circumstances." Id. (emphasis added).

Accordingly, I am in agreement with the court's conclusion

stated in Part III of its opinion that the parties submitted the matter as a "case stated" and that review of the district court's fact-finding is for clear error.[4] <u>Reich</u> v. <u>John Alden Life Ins. Co.</u>, 126 F.3d 1, 6 (1st Cir. 1997); <u>EEOC</u> v. <u>Steamship Clerks Union, Local 1066</u>, 48 F.3d 594, 603 (1st Cir. 1995). The "clear error" standard applies not only to resolution of factual disputes, but also to the factual inferences drawn by the district court on the basis of the stipulated facts. <u>Id.</u>

On the record presented and under an appropriate application of the statute's terms, a fact-finder's inference-based conclusion that the plaintiff's request for an extension of her right to return to work was not a reasonable accommodation cannot be called clearly erroneous. The clearly erroneous standard does not permit an appellate court to substitute its own evaluative judgment of what was or was not reasonable, unless the district court's conclusion was unquestionably, not just arguably, wrong. If the same facts that were presented to the judge below had been presented to a jury, and if the jury had returned a verdict that the requested leave was not a reasonable accommodation, I cannot imagine that this court would disturb that finding.

**IV.**

Rather than challenging the district court's fact-finding as clearly erroneous, the majority identifies two legal errors it says the

---

[4] Of course, any purely legal rulings are subject to <u>de novo</u> review.

district court committed.  First, the court says the district court failed to give individualized consideration to the plaintiff's case, but instead decided that the plaintiff's request for additional leave was per se unreasonable.  Second, the court says that the district court improperly shifted the burden of proof as to "undue hardship" by requiring the plaintiff to disprove it, rather than requiring the employer to establish it.

The second purported error, I think, stems from an incorrect reading of the district court opinion.  The issue argued by the parties, and the issue decided by the district court, was whether the plaintiff was a qualified person with a disability.  In particular, resolution of that issue depended on whether the plaintiff's request for further leave was a reasonable accommodation.  The employer did not argue undue hardship.  Though the district court opinion does state that granting the accommodation would place the employer "in an untenable business position," García-Ayala, 20 F. Supp. 2d at 315, in context that phrase was used not as an elaboration of the "undue hardship" affirmative defense, but as part of the court's explication of why, in the district court's judgment, the requested accommodation was not reasonable.  I do not think it is accurate to say that the district court was giving the employer the benefit of the "undue hardship" affirmative defense, or shifting to the plaintiff the burden to disprove that affirmative defense.

The other error the majority finds is that the district court applied a <u>per se</u> rule about the permissible length of a leave and, therefore, failed to make an individualized assessment of the case. I must say I do not quite understand this criticism. I do not find any indication in the district court's opinion that it failed to give attention to the particulars of the case. To the contrary, the district court discussed in detail the facts of the case as presented by the parties; it gave no less attention to the "individualized" facts of the case than the parties did.

The majority cannot mean that the need for individualized assessment of an ADA case necessarily precludes a disposition as a matter of law, because this court has affirmed dispositions of ADA cases as a matter of law. <u>See, e.g.</u>, <u>Tardie</u> v. <u>Rehabilitation Hosp.</u>, 168 F.3d 538 (1st Cir. 1999); <u>Feliciano</u> v. <u>Rhode Island</u>, 160 F.3d 780 (1st Cir. 1998). And the majority certainly cannot mean that the need for individualized assessment always requires submission of the matter for decision by the trier of fact, because, after all, the court's disposition now orders entry of judgment for the plaintiff as a matter of law, without submission to the trier of fact.

The more pertinent question is, if the district court decided the case by making a pure ruling of law as the majority apparently asserts, rather than by applying the law to the facts and the permissible inferences it drew from them, was its ruling incorrect?

Specifically, did the district court err in holding (if it did) that no rational fact-finder could conclude that the extension of leave requested by García was a reasonable accommodation under the ADA?[5]  I would conclude that on the particular facts of this case, such a ruling would not have been an error.

The leave extension requested by the plaintiff was not a reasonable accommodation as a matter of law because it was not an accommodation at all as that term ought to be understood.  To be an accommodation, the requested leave would have to do what an accommodation under the ADA must do -- enable the employee to perform the essential functions of her job.  To put it in terms of the EEOC's proposed definition of  "reasonable accommodation," García's requested leave would not have been "effective."

It seems to me that the following proposition can be extrapolated from the cases:  For a proposed period of leave to constitute an effective accommodation, it must meet at least two conditions.  First, it must be instrumental to effect or advance a change in the employee's disabled status with respect to the job, so that the employee is enabled to do it.  A period of leave would meet

_____

[5]     The district court expressly recognized that a leave may qualify as a reasonable accommodation in some circumstances.  García-Ayala, 20 F. Supp. 2d at 315.  It is clear, therefore, that it did not rule that a period of leave could never be a reasonable accommodation, and thus the ruling is not in direct conflict with any of our precedents.

this criterion if it permitted the employee to receive therapy or treatment that would succeed in removing the obstacle to employment the particular disability posed.  In Criado, for example, the court noted that the employee's physician believed that "the leave would ameliorate her disability."  145 F.3d at 444.  Similarly, an EEOC interpretive guideline suggests that leave "for necessary treatment" could be a reasonable accommodation, 29 C.F.R. pt. 1630, app., and the Department of Labor advises that leave might be a reasonable accommodation "when the disability is of a nature that it is likely to respond to treatment."  29 C.F.R. pt. 32, app. A(b).  Simply the possibility of improvement is not enough, however; the recovery must be reasonably likely.  See Evans, 133 F.3d at 140 (construing similar state statute).  Further, the prospect of recovery (or enablement) should be judged not by hindsight, but by what reasonably appears at the time the leave is requested.  Id.

Second, the employee's return to work must be relatively proximate in a temporal sense.  The cases do not speak with one voice on this subject, and some give little attention to it, except to imply that the temporal element will figure in the jury's assessment of reasonableness.  Although there seems to be general agreement that a leave period cannot be indefinite, the leave periods that have been explicitly or implicitly approved vary in length.  Some variation is not inappropriate; that is consistent with the need to evaluate each

-39-

case on its particular facts.

In the end, however, the leave must not only be one that serves a proper medical purpose; it must also be one that serves the statutory purpose, which is to enable the employee to perform the essential functions of her job. Cf. Evans, 133 F.3d at 140 (construing similar state statute). It cannot be overlooked that the statute speaks in the present tense, indicative mood. A "qualified individual with a disability" entitled to the statute's protection is a person who "can perform the essential functions of the employment position" with reasonable accommodation. 42 U.S.C. § 12111(8) (emphasis added). "Can perform," as in "now." I would not contend that the statute requires literally instantaneous effectiveness of an accommodation. By approving the idea that some leaves might qualify as reasonable accommodations, courts, including this one, have properly rejected such a cramped and unrealistic reading of the statute. However, fidelity to both the language and purpose of the statute requires that the time within which the proposed accommodation accomplishes its intended purpose -- enabling the employee to perform the job -- must be such that the accommodation is tolerably consistent with the statutory words, "can perform."

I would conclude that the plaintiff did not carry her burden of proffering evidence that the leave she requested was "effective" in these two essential ways. She asked that the employer abide her

continued recuperation for an additional period, but she offered little -- essentially an unelaborated prognostic estimate -- that would enable an objective assessment either of the realistic prospect of recovery as of the time of the request or of the likely duration of her absence. Further, I do not think the requested leave could legitimately be said to be an accommodation enabling her, more or less contemporaneously, to perform the essential functions of the job. It may have given her an opportunity to become able again a couple of months down the road, but that is something that this statute, properly construed, does not address.

Before she began her most recent disability leave in November, 1995, García was performing her job without accommodation. As of late August, 1996, she had apparently recovered and was able again to perform her job without accommodation. Between November and late August, she was not able to work. The requested leave would not have changed that. It would not have made her able to work when she was unable, and when she was able again, it was unnecessary. In point of fact, it would have had no effect on her actual ability to work. What it would have affected was the employer's ability to terminate her employment because she could not work. Restricting an employer's ability to terminate an employee who is unable to work can be a

legitimate object of legislative regulation,[6] but that is not the objective of the statute we are considering. It does not diminish the importance or value of the ADA to conclude that it does not solve all problems, and in particular that it does not solve the problem of protecting job security for employees who need an extended absence from the workplace for medical reasons.

Our obligation is to construe and apply the statute as it was written, sensibly and consistently, so that, among other things, both employers and employees will understand what it requires and what it does not. Discharging that obligation will occasionally call for rulings that deny relief to plaintiffs such as García who have endured extraordinary personal hardship. We make such rulings when necessary in every area of the law, and if called on we should not shy from the obligation in this area as well, without regard to our views as to whether the plaintiff was not treated particularly well by her long-time employer or whether the ADA ought to contain a provision it does not.

## V.

Even if I were to agree with the majority that the district court had not reached its conclusion as an adjudicator of fact and law, but rather had improperly ruled that García's requested accommodation

---

[6] Congress has addressed the problem in the Family and Medical Leave Act, 29 U.S.C. §§ 2601 et seq. Whether it has done so sufficiently is not for our consideration, at least on this occasion.

-42-

was unreasonable as a matter of law, I would nevertheless disagree with the court's disposition.

First, it should be plain from what I have already said that I do not agree that the requested leave was so clearly a reasonable accommodation that no rational fact-finder could conclude otherwise. Whether the opinion says it in so many words or not, that is certainly the substance of its disposition. If the district court erroneously ruled as a matter of law, the proper disposition of this case would be to vacate the judgment for the employer and send the case back for trial by a fact-finder. (I would not hold either side to the waiver of jury trial made previously.)

Second, the court's opinion gives inappropriate weight to the employer's ability to replace García with a temporary employee during her absence from the workplace. I have two problems with it. To begin with, it is an inquiry more pertinent to the affirmative defense of "undue hardship," which was not argued by the employer or considered by the district court. As the court notes, <u>ante</u>, at 19 n.13, there is considerable debate about the relationship between the concepts of reasonable accommodation and undue hardship, and I eagerly agree with the court that this case does not call for us to weigh in on that subject. Since the "undue hardship" defense was not argued or resolved below, I would leave it alone.

More fundamentally, the court's opinion morphs the meaning

of the statute by suggesting that an accommodation that permits the employer, without hardship, to hire <u>someone else</u> to perform the essential functions of the job is equivalent to an accommodation that permits the <u>disabled employee</u> to perform the essential functions of the job.  Again, such a provision might be an appropriate feature of a statute mandating leave policies, but it is not a fitting part of a statute that forbids job discrimination against disabled persons by requiring employers to accept them as workers when -- preconceptions, stereotypes, and "usual" business practices aside -- they are able to do the job.

## VI.

For these reasons, except as to the court's conclusion about the nature of the proceedings below, I respectfully disagree with the reasoning and dissent from the disposition set forth in the court's opinion.