**MIDPOINT SERVICE PROVIDER, INC., Plaintiff–Appellant,**

v.

**CIGNA, The Developmental Disabilities Institute Health Plan, Defendants–Appellees.**

No. 00–7380.

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 2000.

Decided July 2, 2001.

("CG")[1] and The Developmental Disabilities Institute Health Plan's ("DDI") counterclaim. *See Midpoint Service Provider, Inc. v. CIGNA,* No. 98 CIV 5987, 2000 WL 272306 (S.D.N.Y. Mar.10, 2000). The parties consented to the district court's deciding the case on the basis of a statement of agreed facts. However, the parties could not reach an agreement upon such a statement. Both sides made conflicting submissions to the district court without any guiding procedural structure, such as would have been provided by a motion under Fed.R.Civ.P. 56. The district court then resolved disputed factual issues, dismissed the complaint, and entered a money judgment on the counterclaim. Because there was no explicit consent by appellant to the procedure followed and because appellate review regarding the merits and even subject matter jurisdiction is impossible on the present record, we vacate and remand for further proceedings.

## BACKGROUND

Most of the pertinent facts, and all of the appropriate conclusions, are disputed by the parties. We attempt here to provide a factual context for our discussion. However, because the parties never developed a full factual record, our account of the facts is not binding in subsequent proceedings.

From mid-February 1998 through mid-April 1998, Midpoint provided medical services, supplies, and equipment to Robert Slavinski, who had contracted AIDS. Slavinski had been employed by DDI until 1996 and was covered by a CG health insurance plan during that employment. Upon termination of his employment on

Abraham Wax, Abraham Wax, P.C., New York, NY, for Plaintiff–Appellant.

Carolyn B. Stevens, Harvey, Pennington, Cabot, Griffith & Renneisen, L.L.C., New York, NY, for Defendants–Appellees.

Before OAKES, WINTER, and SACK, Circuit Judges.

WINTER, Circuit Judge:

Midpoint Service Provider, Inc. appeals from Judge Baer's order dismissing its complaint and granting judgment on Connecticut General Life Insurance Company

1. Midpoint incorrectly named "CIGNA" in its complaint. The corporation that issued the policy in question is CG, a related entity.

July 3, 1996, Slavinski was entitled to either 18 or 29 months of continuation coverage—the parties dispute the length—conditioned on timely monthly premium payments. Slavinski appears to have made his last payment on November 30, 1997. Appellees claim that, on January 6, 1998, CG sent a notice to Slavinski informing him that he was delinquent and that if no payments were made by February 1, 1998, his coverage would be terminated effective January 1, 1998. They claim that Slavinski made no further payments. Appellees argue, therefore, that Slavinski's policy was terminated effective January 1, 1998. They further claim that, even if Slavinski had made all required payments, his continuation coverage lasted a maximum of only 18 months and would therefore have ended on February 1, 1998—prior to Midpoint's provision of care.

Midpoint claims that, on February 13, 1998, immediately prior to providing care to Slavinski, it telephoned CG, and that a CG representative named "Valerie" stated that Slavinski's coverage became effective on January 1, 1998. The representative is said to have provided Midpoint with details of the coverage, including the deductible amount and other matters. Midpoint's complaint alleged that Slavinski assigned his benefits under the continuation coverage to Midpoint.

Midpoint sent various bills to CG requesting payment for the care provided to Slavinski. On April 10, 1998, Midpoint apparently contacted CG again by phone and was informed that the services had not been preauthorized and that there was no guarantee that the claim would be paid. In June and July of 1998, however, CG remitted a total of $8,500 to Midpoint in response to the billings. However, on September 11, 1998, Midpoint received a denial of further payments from CG because CG had determined that Slavinski's coverage had been terminated. In later phone calls, CG stated that the $8,500 had been paid in error and requested repayment.

Midpoint filed a complaint in New York Civil Court seeking $25,000, the jurisdictional limit.[2] Appellees removed the case to the Southern District of New York on the ground that Midpoint's state claims were preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et. seq.* Presumably, preemption was the result of an allegation in Midpoint's complaint that Slavinski had assigned his claims to Midpoint, *see I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'rs Council Ins. Trust Fund,* 136 F.3d 114, 117 n. 2 (2d Cir.1998) ("[A]ssignees of beneficiaries to an ERISA—governed insurance plan have standing to sue under ERISA."), and removal was proper because, when a claim asserted in state court is preempted by the civil enforcement provisions of ERISA, removal is allowed on the basis of federal question jurisdiction. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). Appellees then apparently served on Midpoint an answer disclaiming liability for the services provided to Slavinski and a counterclaim seeking repayment of the $8,500 allegedly paid in error to Midpoint. The answer and counterclaim appear never to have been filed in the district court and are not in the record on appeal. However, an answer to the counterclaim was filed by Midpoint.

On April 22, 1999, the district court held a scheduling conference at which the parties agreed that the court should resolve the action based on an agreed statement of facts to be filed by June 1, 1999. The

---

2. After removal, Midpoint claimed that the unpaid bills amounted to $58,750.

court entered an order to this effect on April 26, 1999. Midpoint sent a proposed set of agreed facts to appellees' counsel on May 10, 1999 but apparently received no response. Nevertheless, on May 27, Midpoint filed this document, with the optimistic title "STATEMENT OF AGREED FACTS," along with a memorandum of law. Appellees then filed a document, entitled somewhat less optimistically "STATEMENT OF FACTS," along with various affidavits and other documentary evidence. This submission, dated May 27, essentially set out appellees' view that Slavinski's coverage had ended either by January 1, 1998, for failure to tender premiums, or by February 1, 1998, the alleged termination date of Slavinski's continuation coverage. Both dates were before Midpoint provided care to Slavinski. On June 3, 1999, Midpoint sent a letter to the district court stating that it had been unaware that appellees disagreed with its "STATEMENT OF AGREED FACTS." With the letter, Midpoint sent various documents to the court, including phone logs with purported summaries of various conversations with CG. These supported its view that CG had verified coverage prior to Midpoint's rendering of care and had in other ways acted inconsistently with appellees' position that the policy had been terminated on January 1, or, at the latest, February 1, 1998.

Based upon these submissions, the district court rendered an opinion. At the beginning of the "Facts" section, the court stated:

> The following facts were adduced from the parties' submissions and supporting exhibits. The parties agreed to provide the Court with an agreed statement of facts. While that never happened, each party did submit its own statement of facts with a trial memoranda [sic]. I have considered all submissions.

*Midpoint*, at *1. The district court went on to make various findings of fact and rulings of law. It stated that although Midpoint's complaint failed to set out specific causes of action, "since we agreed to decide the matter on all the papers submitted I have done just that." *Id.* at *2. It viewed Midpoint's complaint as asserting state law claims of negligent misrepresentation and equitable estoppel based upon CG's alleged misrepresentation that Slavinski had a valid policy. The district court found that Midpoint did not bring these claims as Slavinski's assignee—no evidence of an assignment had been submitted—and therefore held that its claims were not preempted by ERISA. *See id.* at *3.

With respect to Midpoint's negligent misrepresentation claim, the district court held that no special or fiduciary relationship existed between Midpoint and CG and that such a relationship was needed to assert such a claim under New York law. *See id.* at *4–*5; *Stafkings Health Care Sys., Inc. v. Blue Cross & Blue Shield of Utica–Watertown, Inc.*, 221 A.D.2d 908, 635 N.Y.S.2d 387, 388 (4th Dep't 1995) (requiring privity of contract or relationship approaching privity to prevail on negligent misrepresentation claim and finding no such relationship based upon single telephone call verifying coverage). The court further held that, in any event, Midpoint had not proven justifiable reliance upon the alleged misrepresentation. *See Midpoint*, at *5 *6; *Rotanelli v. Madden*, 172 A.D.2d 815, 569 N.Y.S.2d 187, 188 (2d Dep't 1991) (requiring justifiable reliance). The district court based its rulings on Midpoint's failure to adduce sufficient evidence regarding its relationship with CG or its reliance upon CG's representations.

With respect to Midpoint's equitable estoppel claim, the district court adopted appellees' view that no policy

was in existence when Slavinski's treatment commenced in mid-February 1998, either because the policy had been canceled effective January 1, 1998 due to nonpayment of premiums or because the continuation coverage lasted only 18 months, ending on February 1. *See Midpoint,* at *6. No mention was made of Midpoint's view that the coverage extended for 29 months after Slavinski left DDI. The court therefore denied Midpoint's equitable estoppel claim on the dual grounds that: (i) New York courts do not generally apply equitable estoppel in instances in which "the policy was not in existence at the time of the insured event," *id.; see Nassau Ins. Co. v. Manzione,* 112 A.D.2d 408, 492 N.Y.S.2d 66, 68 (2d Dep't) ("Where there is no coverage under an insurance policy because the policy was not in existence at the time of the accident, estoppel cannot be used to create coverage."), *leave to appeal denied,* 66 N.Y.2d 605, 499 N.Y.S.2d 1025, 489 N.E.2d 1302 (1985), and (ii) there was no evidence of reasonable reliance upon CG's statements or actions, *see Rotanelli,* 569 N.Y.S.2d at 188.

Finally, the district court ruled in favor of CG on its counterclaim, finding that its payments totaling $8,500 to Midpoint were the result of a "mistake of fact." *Midpoint,* at *7. The district court entered final judgment in favor of appellees on Midpoint's claims and appellees' counterclaim. This appeal followed.

## DISCUSSION

We agree with appellant that the proceedings in the district court lacked a procedural structure alerting Midpoint to particular obligations of proof and resultant perils. No party consented to a trial based on conflicting written statements of facts. The process appears to have taken on a life of its own after appellant's counsel concluded that appellees' silence amounted to consent to his "STATEMENT OF AGREED FACTS" and that, therefore, the document should be filed with the court. When CG responded with a conflicting "STATEMENT OF FACTS" essentially to support its claim as to the termination of Slavinski's continuation coverage, appellant's counsel appears to have believed that he had to respond only to that narrow defense. He therefore submitted documents purporting to show that CG had verified coverage and otherwise acted in a fashion inconsistent with the claims of termination.

The district court's view appears to have been that its role was to treat the conflicting statements as evidence presented at a trial, reach a verdict, and enter judgment. Critical to its decision, therefore, was the failure of appellant's "STATEMENT OF AGREED FACTS" to mention Slavinski's assignment of benefits to it. The court found from that silence that there had been no assignment and that appellant's state claims were not preempted by ERISA. *See Midpoint,* at *3 & n. 4. It went on to reject those claims for the reasons stated above.

The district court's finding as to the non-existence of an assignment nicely illustrates the problems emerging from the unstructured events in that court. The basis for appellees' removal of this case from state court was their assertion that the appellant's state law claims were preempted by ERISA, a position they based on the existence of an assignment by Slavinski. Given the district court's factual finding as to the absence of any such assignment, an issue regarding the existence of federal question jurisdiction arose at oral argument. However, the argument clarified little other than the inadequacy of the record on appeal.

A request for post-argument letter briefs on the jurisdictional issue did not help matters, although it resulted in a reversal of position by Midpoint with respect to the existence of an assignment to Midpoint by Slavinski. Whereas appellant had made that assignment the basis for "Point 2" of its main brief, its letter brief demanded a remand to state court based on the assignment's non-existence. Appellees, for their part, argued in their letter that the sole basis for Midpoint's state claims was the assignment of benefits by Slavinski. They concluded, therefore, that the claims are preempted and jurisdiction properly rested with the district court. Of course, if appellant's state claims are preempted, then the district court's discussion of their merits is irrelevant, and the issue of whether appellant has a valid ERISA claim remains outstanding.

The one conclusion that emerges from all this is that the case must be returned to the district court for further proceedings to be conducted under the Federal Rules of Civil Procedure, including a resolution of subject matter jurisdiction.

To be sure, a district court, with the consent of the parties, may decide a case without a formal trial based on written submissions. *See* Fed.R.Civ.P. 52(a); *Acuff–Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 142 (2d Cir.1998). However, it has been observed that "[i]n these non-jury cases, problems arise for appellate courts when the record is unclear that this is what the parties and the trial judge meant to do." *Garcia–Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 644 n. 4 (1st Cir.2000). We share that view and have held that, for such summary trials to be valid, there must be a clear waiver to ensure that the parties have "willingly foregone their right to a full trial." *Acuff–Rose Music*, 155 F.3d at 142–43.

In the instant case, the only agreement of the parties was embodied in the district court's order. It stated that the district court would resolve the case on the basis of a statement of agreed facts. The parties never agreed upon such a statement or to guidelines for future proceedings. We have no idea what was in appellant's counsel's mind when he went with the flow and responded to appellees' conflicting "STATEMENT OF FACTS," but his conduct did not amount to the requisite clear waiver.

We therefore vacate the judgment and remand.